# J. Zinsmeister & Bro. v. Rock Island Canning Co.

(Decided October 19, 1911.)

## Appeal from Jefferson Circuit Court
## (Common Pleas Branch, Second Division).

1. Contracts—Agreement to Purchase Canned Goods—Refusal to Receive Shipment—Action for Damages—Evidence.—Under a contract for the sale by a grocery broker of certain canned goods to a wholesale grocer which the latter refused to receive, an action was brought by the broker to recover the amount, less the contract price that he sold the goods for. The issue was as to whether the contract had been changed by the use of a label other than the one to be used on the cans. Held, That the reading of a letter from the broker's agent to him stating that the purchaser under the contract wanted a certain label on the theory that in writing the letter the agent of the broker was acting as the representative of the wholesale grocer who contracted for the goods, was error. In writing the letter the agent was reporting to his firm the results of his efforts to induce the acceptance of another brand, and in doing this he was the representative of his firm and not the grocer who contracted for the goods.

2. Measure of Damages.—In such an action the measure of damages would be the difference between the contract price and the fair market value of the goods upon the date when the seller took possession of them.

KOHN, BAIRD, SLOSS & KOHN for appellants.

CHAS. H. SHIELD for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

J. Zinsmeister & Bro. are now and have for many years been engaged in the wholesale grocery business in Louisville, Kentucky, and New Albany, Indiana. J. H. Leslie & Company are, and were in December, 1904, brokers in Chicago. At that time they were handling the output of the Rock Island Canning Co., an Illinois corporation operating a cannery at Rock Island, Illinois. Fulton Gordon, of Louisville, was on the same date a merchandise broker in Louisville, Kentucky, and as the representative of Leslie & Co., in December, 1904, called upon Zinsmeister & Bro. with a view of contracting with them for their supply of canned corn for the following year. As a result of these negotiations the following contract was entered into:

"Chicago, Dec. 22, '04.

"Sold for Acc't Rock Island Canning Co.

"Sears, Ill.

"To Messrs. J. Zinsmeister & Bro.

"New Albany, Indiana.

"One thousand (1,000) Cases Rock Island No. 2 Corn at 62 1-2 per dozen.

"Cases Pack of 1905.

"F. O. B. cars at factory.

"Terms: Cash, less 1 1-2 per cent. in ten days from date of invoice.

"Guaranteed against swells for six months.

"Shipment to be made as soon as ready.

"In case of a partial failure of the crop we consent to the cutting down of this order of twenty per cent. without liability for claim for damages and to accept a cash payment of fifteen cents per case for the cutting down of an additional twenty per cent.

"In case of destruction of the cannery by fire or the elements, or on account of strikes, or other unforseen contingencies, the packer is not to be held liable for damage for non-delivery. Should any question arise between buyers and sellers regarding liability, this contract not to be void, but it shall be decided by arbitration what allowance, if any, is to be made to buyers on this account; to be arbitrated in Chicago in the usual way.

"Remarks: To be put under a strip label, with Zinsmeister's name on same label to one sent.

"Accepted, J. ZINSMEISTER & BRO.

"JOHN H. LESLIE & Co., Brokers,

"FULTON GORDON."

Between the middle of September and the 9th of October, 1905, three car loads of corn, containing the number of cases called for in the contract, were consigned to Zinsmeister & Bro., one car being sent to New Albany and two cars to Louisville. Upon the arrival of the cars Zinsmeister & Bro. were notified by Gordon, and thereupon a dispute arose, it being claimed by Zinsmeister & Bro. that the corn was not branded according to specifications, and that the pack was not of standard grade, as called for in the contract. This conversation evidently took place about the 9th day of October, for on that day Zinsmeister & Bro. notified Leslie & Co. in Chicago that because the corn was not properly branded

and the pack was poor they declined to receive it. Quite a correspondence was carried on by these parties between that date and March following. In the letters from Leslie & Co. Zinsmeister & Bro. were urged to accept and pay for the corn, it being insisted that the pack was as per contract, and that the label had been changed by special agreement made after the contract was entered into and at some time during the summer of 1905. Zinsmeister & Bro. insisted that the contract had not been changed, and the goods not being what they had bought, declined to receive it. Finally, in March, 1906, the goods were sold by Fulton Gordon, as the agent of Leslie & Co., bringing something like a thousand dollars less than the contract price. Suit was instituted by Leslie & Co. against Zinsmeister & Bro. to recover this difference in price, together with such cost and expense as had been incurred by them in the way of freight, storage, commissions, etc. The issue was sharply drawn as to whether or not the contract had been changed. Upon a trial before a jury the plaintiff recovered a verdict and judgment for $1,453. Being dissatisfied with certain rulings of the trial court, the defendant prosecutes an appeal.

Three grounds are relied upon for reversal. First, it is insisted that the court erred to the prejudice of appellants in permitting a certain letter, written by Fulton Gordon to Leslie & Co., to be introduced as evidence. Fulton Gordon, as stated, had represented Leslie & Co. in making this contract. He was the special agent in Louisville of this firm. Through him all negotiations had been carried on, and it seems in the midsummer of 1905 his principal wrote him that they had been unable to obtain the labels called for in the contract with which to brand the corn. It appears that Gordon thereupon called upon Zinsmeister & Bro. to see if some other label would not be as satisfactory. He testifies that upon this occasion it was agreed between himself and Zinsmeister & Bro. that they would accept corn branded "Great Rock Island" rather than "Fort Nelson," as the contract called for. Zinsmeister & Bro. deny that any such arrangement was made. Leslie & Co. offered, and were permitted to introduce a letter received from Gordon, which it is insisted was highly prejudicial. The letter is as follows:

"Chicago, August 15, '95.

"John H. Leslie & Co.,
      "Chicago, Ills.

"Gentlemen:

"J. Zinsmeister & Bros. want the Great Rock Island Corn label, the same that they had several years ago, with the 'G. R. I.' in white with red background.

"Respectfully yours,
                        "FULTON GORDON."

The court permitted this letter to be read to the jury on the theory that in writing it Gordon was acting as the representative of Zinsmeister & Bro. This was clearly error. His principal in Chicago had written him, directing him to confer with Zinsmeister & Bro. on the label question. He testifies that he went there as the representative of his Chicago people to confer with Zinsmeister & Bro. about this very matter. When he wrote to his firm he was reporting to them the results of his efforts to induce the appellants to accept a brand different from that called for in the contract. In this he was their representative, and not that of Zinsmeister & Bro. Hence, by introducing this letter he was permitted to corroborate his testimony by his letter. This was a private communication between Gordon and his principal, written after the transaction was closed, and is not admissible on behalf of the principal to whom it was written. There is no pretense that appellants ever saw this letter before it was written and mailed to Leslie & Co., and to permit evidence of this character to be introduced would be to place a litigant against whom it was used at the mercy of one desiring to take advantage of him.

In 16 Cyc., 1205, it is stated:

"A principal can not offer the unsworn statements of an agent made in his favor, either before or after the death of the agent. Accordingly the favorable, unsworn statements of one co-defendant or co-partner for the other, of a guardian for his ward, a principal for the surety, or a husband for his wife or vice versa, are rejected.

"The favorable, unsworn statement of an employe is not evidence for his employer.

"A corporation cannot as a party introduce as evidence the unsworn declaration in its favor of one of its officers."

In Insurance Company of North America v. Guardiola, 129 U. S., 642, there was a controversy over the shipment of some sugar, a dispute as to the number of barrels shipped. Plaintiffs offered to introduce in evidence certain letters which they had received from their agents relative to the transaction. In holding that they were incompetent, the court said:

"It is too clear for discussion that these letters written to the plaintiffs by their own agents were no part of the transaction of shipping the sugar, but were mere reports by the agents to their principals, and were incompetent either in themselves or in corroboration of the testimony of the agents to prove the facts recited in the letters against third persons."

In Warten v. Strane, 82 Ala., 311, it was held that the same rule applies, even though the agent who wrote the letter be dead.

In Ballard v. Beveridge, 61 N. Y. S., 648-9, it was held that the letter of an agent detailing a final settlement of an account, which he was authorized to effect, is inadmissible as evidence of such settlement, for, said the court:

"Plainly the letter * * * was inadmissible. It was a mere narrative of what had occurred."

In City of Chicago v. McKechney, 68 N. E., 954, the court, in discussing a question similar in many respects to that under consideration, said:

"These letters and reports were written statements made to the appellees by their own paid agents. In other words, they were simply declarations made by agents to their principals. They were incompetent testimony and should not have been admitted. They constituted nothing less than hearsay evidence made for the contractors by their own agents. In these letters the agents of the contractors expressed the opinion that the work done by the contractors was properly done, and that the material about the character of which there was a dispute was such material as the contractors claimed it to be. Surely a party cannot be allowed to make evidence for himself. The introduction of these letters presents the case of a principal employing an agent to write him a letter and then introducing such letter in evidence in the principal's behalf in the subsequent trial of an action at law. * * * The contents of these letters thus read before the jury were calcu-

lated to make an unfavorable impression upon the jury to the injury of the city.''

It is insisted for appellee that this letter should be admitted as a part of the res gestae. The conversation between Gordon and appellants is alleged to have taken place in Louisville. This letter is dated Chicago. If it is correctly dated it was written by Gordon to his principal from Chicago. To be upheld as part of the res gestae it would have to appear to be in some way connected with the transaction—to have been written at the time and place that the conversation was had while it was fresh in the minds of the parties. Being lacking in all of the essentials which would make it a part of the res gestae, the court could not have admitted it upon this ground. It was not such. It was simply a communication by an agent to his principal. It could throw no light upon the mooted question as to whether or not the contract was changed, and as its introduction may have had, and doubtless did create an impression on the minds of the jurors that it in some way corroborated the testimony of Gordon, it was prejudicial to appellants.

Complaint is also made that the court erred in permitting to be read in evidence certain of the correspondence which passed between appellants and appellee after appellants had notified appellee that they would not take the corn. We have examined this correspondence and find that the substance thereof is that appellee was trying to induce appellants to take the corn, insisting that it complied with their contract as modified. Appellants insisted all the time that the corn did not comply with the contract, and they would not receive it. This being true, no light was thrown upon the mooted question by any of this correspondence. We are of opinion that all of this correspondence should have been omitted. It did not tend to elucidate the question in dispute, but cumbered the record and perhaps beclouded the issue. Only such evidence should be admitted as tends to support the respective claims of the litigants.

Complaint is made, likewise, that the court erred in instructing the jury on the measure of damages. It is well settled that where there is a breach of an executory contract for the sale of personal property, the aggrieved party may elect to pursue any one of three remedies.

He may sue the purchaser for the price; he may take the goods at the market value at the time and place for delivery and sue for the difference between that price and the contract price; or he may sell the goods within a reasonable time and recover of the purchaser the difference between the amount realized by the sale and the contract price. 2 Meachem on Sales, p. 1678. If he elects to sell the goods he must not only do so within a reasonable time, but must use due diligence to see that they bring a fair price. In the case at bar appellee was notified on the 9th, and again on the 16th of October, that appellants would not receive the corn. It was its duty within a reasonable time thereafter to exercise its right and determine what course it would pursue. Ultimately it sold the corn. This was not done until about the middle of March, 1906. As it took possession of the corn the latter part of October or first of November, 1905, it is insisted by appellants that its measure of damages is the difference between the market price at the time it took possession of the corn and the contract price; and that if it thereafter sold the corn at a less price than the market price upon the date when appellee took charge of it, this additional loss must be borne by appellee.

In 35 Cyc., 537, it is stated that:

"In such case the seller may sue for the price, or for damages, where there has been a breach of the contract by the buyer, but having elected to pursue one of his remedies he can not resort to the other."

If the taking possession of the corn by appellee after it had been notified by appellants that they would not take it was done in the exercise of one of its options, then it would be bound by the market price of the corn upon the day it took possession of it. If, however, its possession thus taken was merely to preserve the shipment from loss, and not with a view of taking the corn itself, appellee had a reasonable time after taking it in possession within which to sell it.

Considering all of the evidence upon this point, the court should have instructed the jury as to the measure of damages that, if they found for plaintiff, they should award it such sum as represents the difference between the contract price and the fair market value of the corn in Louisville upon the date when it took possession of it, or within a reasonable time thereafter, together with such reasonable items of expense as were incurred in caring

for it a reasonable length of time. But if not sold or disposed of within reasonable time, then any additional expense incurred in keeping it or depreciation in value after the expiration of a reasonable time must be borne by the plaintiff.

For the reasons indicated the judgment is reversed, and cause remanded for further proceedings consistent herewith.