## B. F. Swartz & Co. v. Woldert Grocery Co.

(Decided January 29, 1913.)

Appeal from Jefferson Circuit Court.
(Common Pleas Branch, Third Division.)

1. **Bills of Lading—Delivery of is Symbolic Delivery of Property Itself.**—The delivery of a bill-of-lading, like the delivery of a warehouse receipt, is a symbolic delivery of the property itself; it has the same effect as the delivery of the property, and a transfer of the bill-of-lading by the person in possession thereof, has the same effect and force as a transfer of the property by the same person.

2. **Bills of Lading—When Draft Attached Property Does not Pass Until Draft is Paid.**—The general rule is, that where there is a consignment of goods to the seller, his agent, or order, and the bill-of-lading is forwarded to the seller's agent, with draft attached, to be delivered to the buyer on payment, the seller thereby manifests an intention to preserve his property in the goods, and the property does not pass until the draft is paid.

3. **Bills of Lading—When Tender of is not Necessary—Waiver of Tender.**—No tender of the bill-of-lading is necessary when the contract has been definitely repudiated by the buyer, as by a refusal to accept delivery if tendered, since such action upon the part of the buyer will be treated as a waiver of the required tender.

4. **Bills of Lading—Waiver of Tender of.**—Where a buyer rejected goods consigned to the seller upon the ground that the goods were not merchantable, he thereby waived a tender of the bill-of-lading.

THOMAS A. BARKER and TAYLOR & McKEE, for appellants.

DUFFIN, SAPINSKY & DUFFIN, and PAUL BLACKWOOD, for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This suit for $529.20 damages for breach of contract of sale, grew out of the following state of facts:

On Saturday, June 8, 1907, the appellee grocery company, of Tyler, Texas, through its agents, Donigan & Barrett, of Louisville, Ky., sold to appellant, of Louisville, one car of Pink Tomatoes at 75 cents per crate, amounting to $688.54; and, on the Monday following a car of Triumph Potatoes at 75 cents per bushel, amounting to $313.55, F. O. B. Tyler. The two sales were confirmed on Monday by an order in writing. At the bottom thereof there is this signed memorandum:

"B. F. Swartz & Co.

"Tomatoes shipped on June 8, 1907;

"Potatoes on 10 June, 1907.

B. F. Swartz."

On Friday, June 7, appellant had, through Donigan & Barrett, sold a car of tomatoes to John Weisenstein & Co., produce dealers of Louisville, at 90 cents per crate, F. O. B. Tyler, Texas, and had shipped them on the 8th; but, upon appellee's failure to confirm the sale, John Weisenstein & Co., ordered a car of tomatoes from Jacksonville, Fla., whereupon Donigan & Barrett telegraphed appellee, on Monday the 10th., as follows:

"Louisville, Ky., June 10, 1907.

"Woldert Grocery Co.,

Tyler, Texas.

Last telegram came too late; Weisenstein in meantime ordered car Jacksonville. Swartz offers Seventy Five, and Seventy Five for Triumphs; best we can do; advise.

Donigan & Barrett."

Appellee answered as follows:

"Tyler, Texas, June 10, 1907.

"Donigan & Barrett,

Louisville, Ky.,

Confirm car Tomatoes and Potatoes for Swartz; car numbers later; have them send bank guarantee early tomorrow.

Woldert Grocery Co."

Swartz & Co., gave the bank guaranty the same day through the German Insurance Bank, of Louisville, and the Tyler Bank, on the next day, notified appellee of that fact.

In the meantime, on Saturday, June 8th., the car of tomatoes had gone forward and was consigned, by the bill of lading, to "Jno. Weisenstein & Co., Louisville,

Ky.'' This was the car of tomatoes that appellee had resold on Monday the 10th to appellant, at 75 cents per crate. On Monday the 10th appellee shipped the car load of potatoes, consigning them to "Donigan & Barrett, Louisville, Ky." Appellee had, on the 8th, forwarded sight draft on Jno. Weisenstein & Co., for $826.20 (the price at 90 cents per crate), with the bill of lading for the car of tomatoes attached; and, on the 10th it forwarded sight draft on B. F. Swartz & Co. for $313.55, with the bill of lading for the car of potatoes attached thereto.

On Tuesday the 11th, Donigan & Barrett sent the following telegram to appellee:

"Louisville, Ky., 6-11-07.

"Woldert Grocery Co.,
   Tyler, Texas.

You misunderstand; Weisenstein's car 8958 will go to Swartz, only one tomatoes and potatoes ordered to date.

Donigan & Barrett."

The telegram to which the foregoing was an answer, is not in the record.

Upon the arrival of the car of tomatoes in Louisville, Donigan & Barrett, having discovered that it was consigned to Jno. Weisenstein & Co., with a draft on that firm for $826.20 attached to the bill of lading, sent appellee the following telegram:

"Louisville, Ky., June 13, 1907.

"Woldert Grocery Co.,
   Tyler, Texas.

Bank holds draft Weisenstein at ninety; instruct them deliver Swartz seventy-five and advise us.

Donigan & Barrett."

Thereupon appellee wired as follows:

"Tyler, Texas, June 13, 1907.

"Louisville Natl. Bkng. Co.,
   Louisville, Ky.

Deduct $137.70 Weisenstein draft and present Swartz Bros. Please notify Donigan & Barrett.

Woldert Gro. Co."

On Friday morning, June 14th, appellee received the following night telegram:

"Louisville, Ky., 6-13-07.

"Woldert Gro. Co.,
   Instruct Bank to let Swartz have car immediately;

two cars in from Jacksonville; market unsteady; quote on Saturday shipment.

Donigan & Barrett."

Appellee replied as follows:

"Tyler, Texas, June 14, 1907.

"Donigan & Barrett,
    Louisville, Ky.,

Instructed bank yesterday; however, car is not shippers order; get order from Weisenstein and deliver. Offer tomatoes tomorrow sixty, subject confirmation.

Woldert Grocery Co."

On the same day appellee wired their Louisville agents as follows:

"Tyler, Texas, June 14, 1907.

"Donigan & Barrett,
    Louisville, Ky.

Swartz bank telegraphed here today cancelling guarantee Tomatoes; make them pay draft; will not allow cancellation guarantee on Potatoes.

Woldert Grocery Co."

To that telegram the agents responded as follows:

"Louisville, Ky., 14th, 07.

"Woldert Gro. Co.,
    Tyler, Tex.

Market has declined and Swartz is trying in every way to crawfish; says he has placed guarantee with Tyler bank, and refuses to take up draft; have engaged counsel.

Donigan & Barrett."

Upon order of appellee of the 15th., the bank delivered the bills of lading to Donigan & Barrett, who caused the tomatoes and potatoes to be sold by the railroad, at the best price then obtainable, and at a net loss of $529.20 under the purchase price, after paying the freight charges. Appellee brought this suit against the appellant to recover said sum of $529.20; and, having obtained a verdict and judgment therefor, the defendant appeals.

The petition sets up the contract of sale; alleges that plaintiff shipped said car of tomatoes and potatoes "to defendants to Louisville, Ky."; that said cars "arrived in Louisville, Ky., in due course"; but that defendant, in breach of its contract, and through no fault of plaintiff, wrongfully failed and refused to accept or pay for same, and that by reason of said refusal plaintiff was compelled to sell the goods at a net loss of $529.20"—giving the details of the sale by the railroad company.

At the conclusion of plaintiff's evidence, and again at the close of all the evidence, defendant moved the court to peremptorily instruct the jury to find for the defendant; but the court overruled the motions, and submitted the case to the jury, under the following instructions:

"1.   If you believe from the evidence that in June, 1907, the Woldert Grocery Company sold to B. F. Swartz & Co., one car load of tomatoes and one car load of potatoes, at and for the prices in the petition set forth, and that within reasonable time thereafter said Woldert Grocery Company offered and tendered the said two cars of produce to the defendants and that at the time of the tender of said goods the tomatoes and potatoes were in good merchantable condition, and you further believe from the evidence that the defendants, upon such tender, refused to accept said goods, the law is for the plaintiff and you shall find for it in the sum of $529.20.

2.   But if you believe from the evidence that the defendants did not purchase from the plaintiff in June, 1907 the two cars of merchandise in the evidence referred to or, if you believe from the evidence that upon tender of the two said cars of produce, (if they were tendered to the defendants), the defendants inspected them and found them not of merchantable quality, then, in either of said events the law is for the defendant and the jury should so find."

Appellants' motion for a peremptory instruction was based upon the theory that there was no evidence that either the tomatoes or the potatoes had ever been delivered or tendered to them.

It will be remembered the bill-of-lading for the tomatoes named John Weisenstein & Co., as consignees, while the bill-of-lading for the potatoes named Donigan & Barrett as consignees; and it is insisted that since neither bill-of-lading was ever tendered to appellants, there was not such a tender in law, as would enable the seller to maintain an action for breach of contract.   It is true the delivery of a bill-of-lading, like the delivery of a warehouse receipt, is a symbolic delivery of the property itself; it has the same effect as the delivery of the property, and a transfer of the bill-of-lading by the person in possession thereof has the same effect and force as a transfer of the property by the same person.   Newcomb, Buchanan & Co. v. Cabell, 10 Bush, 460.   As was

said in How v. Barker, 8 Cali., 614, "Upon principle, reason and convenience, it is difficult to draw any substantial difference between a bill-of-lading and a warehouse receipt."

The general rule is that where there is a consignment of goods to the seller, his agent, or order, and the bill-of-lading is forwarded to the seller's agent, with draft attached, to be delivered to the buyer on payment, the seller thereby manifests an intention to preserve his property in the goods, and the property does not pass until the draft is paid. Kentucky Refining Co. v. Globe Refining Co., 104 Ky., 559, 42 L. R. A., 353.

In Benjamin on Sales (7th Ed.), section 688, the rule is announced as follows:

"Where by the terms of a contract of sale the vendor was to deliver to the purchaser a bill-of-lading for the cargo which had been bought on the purchaser's orders, it was held that the delivery of the bill-of-lading within a reasonable time after its receipt, and without reference to the unloading of the cargo, was incumbent on the vendor, and that the buyer was justified in rejecting the purchase on the refusal to deliver the bill-of-lading."

No tender, however, is necessary when the contract has been definitely repudiated by the buyer, as by refusal to accept delivery if tendered, since such action upon the part of the buyer will be treated as a waiver of the required tender. 35 Cyc., 171.

In the case at bar there is no evidence that appellee formally tendered the bill-of-lading to appellants, the effect of the testimony upon this subject being that the Louisville National Banking Company, which held either one or both of the drafts, with the bill-of-lading attached, notified appellants, by telephone, of their arrival, and that Donigan & Barrett also notified appellants by letter of the arrival of the cars. Appellants deny they had any notice; but Drane, who was a member of appellant firm, testifies that he inspected both cars upon their arrival in Louisville, and found the tomatoes in bad condition, and the potatoes to be little, picked, and not graded, while some of them were rotten. He declined to receive the goods, because he claimed they were not sound or merchantable.

We think there can be no doubt from this testimony that appellants waived a formal tender of the bills-of-lading. In inspecting the goods and rejecting them as

they did, they rested their defense solely upon the unmerchantable quality of the goods. The inspection having been made with the view of either accepting or rejecting the goods, a rejection made a tender unnecessary, and useless. Therefore, the only question left open for trial, was the ground of the rejection, namely, the unmerchantable quality of the goods. That question was fairly submitted to the jury; and, under the rule which requires us not to set aside the finding of a jury unless it be flagrantly against the weight of the evidence, we do not feel justified in disturbing the verdict. It was purely a question of fact, determined under conflicting testimony, and one peculiarly for the jury.

Judgment affirmed.