## Paducah Cooperage Company v. Arkansas Stave Company.

(Decided February 17, 1922.)

### Appeal from McCracken Circuit Court.

1. Sales—Inspection—Executory Contract.—An executory contract for the sale of staves is not clearly and definitely repudiated by a letter written by one of the parties, stating that he is unable to fix a date of inspection and also that he is willing that the other party sell the staves to some one else. Renunciation of a contract must be clear and unmistakable.

2. Contracts—Executory Contract—Performance.—The failure of one party to an executory contract to perform its obligation thereunder was not such a breach as required the other party to act at once for the protection of his interest. But the party who desired the performance of the contract had the right to insist on its per-

formance, though it also had the right to elect to treat the contract as breached.

3. Contracts—Breach.—Evidence examined and held to show that the breach complained of occurred on March 10th, on which date the party willing to perform the contract declared the breach to exist because of the failure of the other party to carry out his part of it.

4. Appeal and Error—Instruction.—An instruction, though technically erroneous, if more favorable to the objecting party than he was entitled to under the evidence, does not amount to reversible error on appeal.

5. Appeal and Error—Instruction.—An instruction submitting to the jury a question which was in fact a question of law and should have been so adjudged is not prejudicial error, where under the evidence it should have been adjudged against the complaining party.

MOCQUOT, BERRY & READ for appellant.

WHEELER & HUGHES for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

This is an appeal from a judgment of $1,750.00 damages, for the breach of a contract for the sale of 100,000 ties at $80.00 a thousand.

The contract in evidence consists of letters written pursuant to and confirming an oral agreement. The important letters are:

"Arkansas Stave Company,
                "Brinkley, Ark., Nov. 6, 1918.

"Paducah Cooperage Co.,
        Paducah, Ky.

"Gentlemen:—

"We have booked your order for one hundred thousand (100,000) 34"x¾" mill run air dried and listed white oak staves at eighty (80) dollars per thousand staves to average 4½" f. o. b. cars Brinkley, Ark. Terms net cash.

"Staves are to average and per cented on yard at Brinkley in lots of two or more car loads and in a manner satisfactory to us. First inspection about November 20th, second December 10th.

":Staves are to be paid for by sight draft attached to B/L when loaded.

<blockquote>
"Very truly,
"ARKANSAS STAVE CO.,
By R. J. Goeppinger."
</blockquote>

"Paducah Cooperage Company.

"Paducah, Ky., Nov. 8, 1918.

"Arkansas Stave Co.,
Brinkley, Ark.

"Gentlemen:—

"Referring to a contract of November 6th, for (100,000) mill run AD&L white oak staves, on which we promised to send an inspector to your place about November 20th. We will make an effort to get our inspector on your yard as near this date as we can. It might possibly be in the following week before he arrives, but we trust this will be satisfactory. .

<blockquote>
"Yours very truly,
"PADUCAH COOPERAGE CO.,
By Henry F. Smith."
</blockquote>

On November 29th and December 6th appellee wrote appellant advising that the first installment of staves was ready for inspection and calling on it to send an inspector. December 9th appellant replied saying that it had been seriously delayed on account of influenza, but promised to send an inspector so soon as practicable. Thereafter by letter of December 23rd appellee exhibited impatience and insisted on compliance with the contract at the earliest possible date. In response to that letter appellant excused the delay on the ground of congestion in its yards at Paducah but again promised to send an inspector, reminding appellee that it was useless to grow impatient as "we are doing the best we can." It was further suggested that several companies had been requested to delay shipments and appellee alone had complained. January 18th appellee wrote reminding appellant of its failure to comply with the agreement and expressing the expectation of an early fulfillment of the contract. To this letter appellant replied indicating that it had nothing further to say on the subject, that an inspector could not then be sent and it would be satisfactory to it to sell the staves to some one else. How-

ever, it again assured appellee of its willingness to send an inspector.

Following the letter of January 20th, appellee on February 27th wrote appellant reminding it that it had not complied with the terms of the agreement, and, receiving no reply to that letter, on March 10th again wrote, notifying appellant that it would proceed to dispose of the staves for its account, holding it responsible for any losses sustained by reason of the breach of the contract. Carrying out this last letter appellees sold the staves about March 15th at the price of $62.50 a thousand, and, later, brought this suit to recover the difference, amounting to $1,750.00. Judgment was rendered for the full amount of the claim and appellant is seeking a reversal, on the ground that the contract was breached on January 20, 1919, which it contends authorizes a reversal because of errors in the instruction given.

The argument that the letter of January 20th definitely breached the contract is based to some extent on the idea that appellee waited twenty-seven days before replying to it. That circumstance, in our opinion, does not offer any evidence of a breach on January 20th, if considered in conjunction with the letter itself and the previous correspondence. Throughout the correspondence to January 20th appellant had manifested the purpose of complying with its part of the contract, and though the original agreement provided for inspection "about November 20th, second December 10th," in the letter of acceptance it was stated that appellant would send the inspector to the yards as near that date as possible. In the subsequent correspondence there was a recognition on the part of appellee of appellant's professed inability to comply strictly with the contract as to the dates of inspection. There was also an extension of the time on the faith of appellant's avowed purpose to carry out the contract.

The letter of January 20th was not a repudiation of the contract though it carried the first intimation of evasion. It contained no promise of a definite date of inspection nor any assurance of an effort to arrange for an inspection at the earliest practicable date as other letters had done. But it did not declare an intention of abandoning the contract, though it did evidence a willingness and perhaps a desire to avoid it. This letter

was not of itself a breach of the contract though appellee might have elected so to treat it. It is a universal rule that renunciation must be clear and. unmistakable. (13 C. J. 654.) The reason for the rule is obvious, since the party seeking to avoid an obligation might write an equivocal letter upon which the other party in good faith might act and in consequence subject himself to liability.

Appellee had the right on receipt of the letter, as indeed it had the right before that time, to elect to treat the contract as broken and pursue such course as it deemed wise for the protection of its rights. But there was no definite and clear renunciation on the part of appellant and there was still left to appellee the option of waiting a reasonable time in the expectation that appellant would carry out its agreement, according to its formerly announced intention so to do.

In Louisville Packing Company v. Crain, 141 Ky. 379, there is a clear exposition of appellee's duty and rights in the premises:

"In 9 Cyc. 635, it is announced, as a general proposition, that the parties to an executory contract have a right to have the contractual relation maintained up to the time for its performance, and if one of the parties thereto renounces or breaches it before that time, the other may sue on the breach at once. This proposition is supported by the weight of authority. But there are limitations to the rule, one of which is, that if one of the contracting parties elects not to accept the breach or renunciation, but continues to insist upon the performance of the contract according to its terms, then the contract remains open or in existence for the benefit of both parties; and, if, during such time, anything occurs to discharge or invalidate it, the party seeking to renounce it may take advantage of such discharge. 9 Cyc. 637; Smith v. Georgia Loan, etc., Co., 133 Ga. 975; Kadish v. Young, 108 Ill. 170; Howard v. Daly, 61 N. Y. 362; Avery v. Bowden, 5 E. & B. 714."

Although appellee, on receipt of the letter of January 20th, might have elected at once to treat the contract as broken it did not so elect, but waited until February 27th when it again reminded appellant of the contract and receiving no response to its letter of that date on March 10th declared the contract breached. If appellant did

not intend to carry out the contract it could have clearly expressed that purpose in the letter of January 20th. It did not do so but left appellees under the impression that it would fulfill its obligations, though indifferent as to doing so. Appellee was not required to treat the letter as a renunciation of the contract, but had the right to expect its performance and to govern itself accordingly until such time as it concluded that the contract would not be performed and then to declare it forfeited. This it did on March 10th. We hold, therefore, that the breach occurred on the latter date, and that appellee's duty in connection with the contract with reference to minimizing its damages did not arise until that time.

It is argued for appellant that the instruction, allowing a recovery, is not based on the theory that appellee advanced in its petition and is, therefore, erroneous. It is said that the petition sought a recovery of the difference between the contract price and the price for which the staves were sold, and the instruction permitted a recovery of the difference between the contract price and the reasonable market value, at the time the contract was breached. This variance is alleged to be fatal. The petition alleged that before selling the staves appellee made diligent investigation of the markets and disposed of them at the best price obtainable; that the reasonable market price at the time appellant breached the contract was $6,250.00 or $1,750.00 less than the amount that appellant agreed to pay the plaintiff for the staves.

The measure of damages in the instruction was the difference between the contract price and the reasonable market value of the staves at the time appellee received notice or had notice or knowledge that appellant had breached the contract by finally failing and refusing to inspect and receive the staves. We are unable to see any variance between the petition and the instruction on this point.

Another objection urged by appellant is that the instruction erroneously defined the measure of damages. It is insisted that the correct measure was the difference between the contract price and the salable value of the staves within a reasonable time after the contract was breached, the latter fact to be ascertained according to the measure of diligence used by appellee in selling and obtaining the best price that could be obtained. In other words the reasonableness of the time of sale and the

diligence used in procuring the best obtainable price were questions to be submitted to the jury. Indiana Tie Co. v. Landrum, 137 Ky. 769; Zinsmeister & Bro. v. Rock Island Canning Co., 145 Ky. 25, are relied on in support of this contention.

A serious detriment to this argument exists in the fact that, even if appellant's contention is correct in theory, the error was not prejudicial, for under the evidence the court might well have instructed the jury as a matter of law that appellee did exercise due diligence in selling the staves for the best price obtainable within a reasonable time after the breach, and thus have definitely fixed the measure of damages as the difference between the contract price and sale price. The instruction was more favorable to appellant on this phase of the case than it was entitled to, because it let the jury pass on the question of whether there was a decline in the market prices between the breach and the date of sale when in fact the evidence presented no such issue.

What we have said with reference to this part of the instruction applies also to that part of it assailed on the grounds that it improperly left to the jury the question as to when the breach occurred. Technically the instruction on this point was incorrect, but it was more favorable to appellant than the evidence warranted. Under the evidence it would have been proper to instruct the jury that the breach occurred on March 10th, since appellee had the right to wait until that date to elect to treat the contract as breached and all the evidence shows that it did elect on that date so to treat it.

The contention that appellant's side of the case was not presented to the jury at all by the instruction is without merit. The breach of the contract was admitted. It was proper for the jury to return nominal damages under the evidence. The instruction so told the jury and then placed the burden on appellee to prove its case as to damages. As framed it sufficiently stated the full law of the case, allowing a recovery for nominal damages only in the event of the failure of appellee to prove substantial damages.

The judgment is affirmed.