## Memhard, et al. v. Alfred Gabrielsen Company.

(Decided February 14, 1928.)

(Rehearing Denied, with Modification, May 22, 1928.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Guaranty.—Where telegram was inquiry asking if plaintiff would furnish tomatoes, and answer was that plaintiff would furnish car, and information was asked concerning name of purchaser, and guaranty of draft given for shipment was requested, and transaction was not completed until defendant had wired guaranty, held that guaranty was not without consideration.

2. Guaranty.—Where broker guaranteed that principal would pay for shipment, and principal was granted indulgence on draft which was not an enforceable extension, and subsequently broker corresponded, asking indulgence for principal, held, that broker was not released from guaranty by indulgence.

3. Sales.—As respects liability for payment for shipment of tomatoes after default, where shipment contained 1,233 cases and 30 were spoiled, and it was supposed to contain 1,250 cases, held facts were not sufficient to authorize rescission of contract.

4. ' Sales.—Where contract for tomatoes called for sample case, but sample case was not sent, that buyer refused to pay after shipment solely on ground of inability to pay was waiver of all other grounds of objection.

5. Sales.—Where broker, who had guaranteed payment of principal, and principal, refused to accept shipment of goods at Louisville, which was higher market than Pacific Coast, after freight had accrued, held, that seller had right, by exercising due diligence, to

sell goods on market within reasonable time, and recover of purchaser difference between net amount realized from sale and contract price.

6.  Husband and Wife.—In entering into partnership firm, married woman constitutes each member of firm her agent.

7.  Husband and Wife.—Where married woman was member of brokerage partnership which guaranteed payment of draft given in payment for shipment, and there was default in payment, held that she was liable on contract of guaranty at least to extent of interest in firm property; statute restricting her liability as surety having no application.

RICHARD B. CRAWFORD for appellants.

SHACKELFORD MILLER, JR., and BURTON VANCE for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Alfred Gabrielsen Company, a corporation of San Francisco, Cal., and F. H. Memhard and L. D. Memhard, a partnership of Louisville, Ky., doing business under the style of F. H. Memhard & Co., are brokers, and were known to each other to be such at all times mentioned herein. For brevity, these parties will hereinafter be referred to as appellee and appellants, respectively. In December, 1920, appellee filed this action against the defendants for the net balance due on the purchase price of a car of canned tomatoes. It is alleged in the petition that the defendants ordered those goods for one of their customers and guaranteed payment of the purchase price; that the tomatoes were shipped and delivery refused by the purchaser in Louisville, and they were sold on the market, and the net proceeds from the sale credited upon the purchase price. The purchaser of the goods, the Moneyworth Grocery Company, was also made a defendant, but made no defense, and has taken no appeal from the judgment against it. The appellants filed answer traversing the affirmative allegations of the petition and affirmatively pleading that it was a part of the contract for plaintiff to express a sample case in advance of shipment, and that it failed to do this. They also pleaded misrepresentation to them on the part of the purchaser inducing them to become guarantors. At the time of trial, something over a year later, appellants withdrew the affirmative defenses in their answer and offered to file an amended answer pleading no consideration for the guaranty; that L. D. Memhard is a married

woman, the wife of F. H. Memhard; that the guaranty was made without her knowledge or consent and without any conveyance of her property as security, and is therefore in violation of the statutes as to her.

All questions of law and fact were submitted to the court, who refused to permit this answer to be filed, though it appears from his written findings of fact that he considered the defenses raised therein, and rendered judgment for plaintiff for $533. Defendants appeal.

Observing the question of consideration, it appears that all the negotiations for the purchase were conducted by correspondence. It began with a telegram from defendant reading:

"Nov. 26, 1919.

"Alfred Gabrielsen Co., San Francisco, Cal. Confirm one thousand cases two and one half standard tomatoes with puree one twenty seven one half coast express case for samples.

"F. H. Memhard & Co."

To which appellee answered:

"F. H. Memhard & Co., Louisville, Ky. Confirm one car standard tomatoes two and half with puree for trimmings one twenty seven and half. Necessary to ship twelve hundred and fifty cases to complete car as packed in fiber. We will express case but not sold subject approval sample as from good reliable packer. Wire buyers name shipping instructions quick.

"Alfred Gabrielsen Company."

Appellants responded by telegram reading:

"Nov. 30, 1919.

"Alfred Gabrielsen Co., San Francisco, Cal. Answering accept car standard tomatoes two one half with puree from trimmings one twenty seven one half ship to Moneyworth Grocery care of Louisville Public Warehouse Brook and Main Louisville Kentucky sight draft presentation.

F. H. Memhard & Company."

Appellee rejoined:

"Dec. 1, 1919.

"F. H. Memhard & Co., Louisville, Ky. Your night letter confirming tomatoes Moneyworth Gro-

cery Company these people not rated packers declines ship unless you guarantee draft will be taken up on presentation. Answer.

"Alfred Gabrielsen Company."

And appellants responded by wire:

"Dec. 4, 1919.

"Alfred Gabrielsen Co., San Francisco, Cal. Answering will guarantee acceptance of draft.

"F. H. Memhard & Co."

Appellee responded by letter:

"Dec. 6. 1919.

"F. H. Memhard & Co., Louisville, Ky.— Dear Sirs: Referring to our exchange of wires, we are in receipt of yours of the fourth advising that you guarantee acceptance of draft. We have instructed that this car be shipped as soon as possible. We are inclosing you herewith our sales memo No. 419, covering sale of car of tomatoes to the Moneyworth Grocery Company and beg to thank you for your cooperation in this deal, and trust that same may be a forerunner to a profitable business for the future.

"Very truly yours,

"Alfred Gabrielsen Co."

Appellants' contention is that the contract was closed by the third telegram, and that no consideration was given for the subsequent agreement of guaranty. But to this we cannot assent. The first telegram was an inquiry asking if plaintiff would furnish 1,000 cases 2½-pound cans of tomatoes at $1.27½ per dozen coast price and a case for sample. The answer was that plaintiff would furnish a car of 1,250 cases at the price and express a case, but that shipment was not to be a sale by sample. It also asked information as to the name of the purchaser and shipping instructions. Admittedly this telegram was a counter offer, and did not close the trade, nor can it be said that it was putting a final offer for acceptance "Yes" or "No." It made no reference to terms, and inquired for the buyer's name and shipping instructions, matters still to be considered. Nor were these matters concluded by appellants' reply accepting such proposal and *offering* terms and stating the name of the buyer. It is true that a large part of the business of the country is conducted by consigning merchandise

on sight draft with bill of lading attached. But, even though under certain circumstances such terms may be implied in contracts of this character, it is clearly evident that appellee did not intend to credit an unknown buyer and upon learning its name declined to extend such credit to it or to ship at all unless appellants guaranteed payment of the bill. True, if the negotiations had been completed before the buyer's name had been disclosed, the brokers would have been liable for the purchase price as agents for an undisclosed principal, but not so after the name of the principal was disclosed; hence the fourth telegram, declining to ship unless guaranteed by the broker, a proposition that appellants at once accepted, thus showing the construction both parties placed upon it. We think it quite clear that the negotiations were not complete up to this point, and that the contract did not become complete or enforceable until appellants' acceptance of the guaranty in their final telegram. It follows that the guaranty was not without consideration.

It is next urged that defendants, as guarantors, were released by indulgence granted the Moneyworth Company. As to this, it appears that the car arrived in Louisville on January 20, 1920. The draft had been sent some weeks earlier and payment refused December 24, 1919. On this draft the drawee seems to have been entitled to a cash discount of 1½ per cent. if paid in ten days, and that the appellee indulged the drawee during that period, and this is relied on as an extension of time without the consent of Memhard. But it is not claimed that there was ever any legal or enforceable extension of the time in which the draft might be paid based on any sort of consideration. Further, that appellants were not objecting thereto is evidenced by the fact that subsequently F. H. Memhard and Tuggle, one of appellees's agents, conferred with the vice president of the bank holding the draft in reference to the matter, and, according to the evidence of these two witnesses, Memhard asked for an extension until the 16th of February and promised to pay it at that time; and all of the other correspondence during this period indicates that appellants were asking this indulgence and obviously they cannot rely on it as a defense.

The next insistence is failure of plaintiff to comply with the conditions of the contract. It is shown in evidence that the sample case was never shipped; that the car actually contained 1,233 cases of tomatoes, and that

30 of these were spoiled; it being further shown that goods of this character are subject to fermentation, and that more or less spoiling will occur within a few months after packing, but that this cannot be told by an earlier inspection, and if fermentation later develops it is customary to make an abatement in the purchase price, and that the ultimate purchaser of these goods did receive such abatement. We do not think these facts sufficient to authorize a rescission of the contract. It must be noted that this was a sale in gross of a car of tomatoes estimated at 1,250 cases, and a shortage of 3 per cent. in such shipment is not in our opinion sufficient to authorize a rescission. Certainly the fact that some of the tomatoes spoiled later would be insufficient for that purpose, as it is shown that this cannot be ascertained at the time of shipment, but that it is usual and customary to later make an adjustment in price for it. Aside from this, the presentation of the bill of lading was a symbolic tender of the goods themselves. At that time appellants made no complaint of the failure to receive the sample case or of the quantity or quality of the goods, but refused payment solely on the ground of inability to pay the same. This was a waiver of all other grounds of objection except that such might have been grounds for an abatement of price as suggested, supra. Swartz & Co. v. Woldert Grocery Co., 151 Ky. 743, 152 S. W. 934; Ten Broeck Tyre Co. v. Rubber Trading Co., 186 Ky. 527, 217 S. W. 345; Young v. Wallace, 201 Ky. 30, 255 S. W. 856; 26 R. C. L. p. 626; Gaines & Sea v. R. J. Reynolds Tobacco Co., 171 Ky. 783, 188 S. W. 847.

Appellants criticize the measure of damages adopted by the court, which was the difference between the contract price and accrued charges, less price realized on the resale. The argument is that the correct measure is the difference between the contract price and the market price on the Pacific Coast the day the contract was repudiated; that there was no difference between the two in this respect on December 20, 1919, the day they claim such repudiation, and a difference of only 15 cents a case on February 16, 1920, the date of final repudiation fixed by appellee, and therefore the damages at most should not have exceeded $186. Reliance being had on Newton v. Bayless Fruit Co., 155 Ky. 440, 159 S. W. 968. In that case there was a sale of five cars of oranges at $2.05 f. o. b. cars, Winter Garden, Fla., to a purchaser at Lexington, Ky. Two cars were shipped, accepted, and

accounted for. But before further shipment the purchaser countermanded the other three. In a suit by the seller it was held that the measure of damage, if any, was the difference in the contract price and the market price of such oranges at Winter Garden on the day the contract was countermanded. But that is not this case. Here the buyer and his guarantor refused to accept the goods after they had been received at Louisville, a higher market than any on the Pacific Coast, and after $600 freight had accrued on the shipment, and after, according to appellee's evidence, temporizing and delaying for practically two months. To have returned the car to the Pacific Coast then would have been a farcical blunder. Besides, it must not be overlooked that the contract called for Louisville delivery, and the car was shipped to that point with draft attached to bill of lading. Under these circumstances in the election of remedies the seller had the right by exercising due diligence to sell the goods on that market within a reasonable time, and recover of the purchaser the difference between the net amount realized from the sale and the contract price. Zinsmeister & Bro. v. Rock Island Canning Co., 145 Ky. 25, 139 S. W. 1068; Paducah Cooperage Co. v. Arkansas Stave Co., 193 Ky. 774, 237 S. W. 412. The lower court found that it did this, and, as we understand the record, allowed defendants credit for the full amount realized on the resale on the basis of 1,250 cases, less storage, insurance, drayage, and interest on delayed payment, and deducted that from contract price of 1,223 cases at $2.55 per case; the freight being equalized on the two sales. We think this proper.

It is further urged that L. D. Memhard is a married woman, wife of F. H. Memhard, and that she never agreed to guarantee payment of this shipment, but protested against it. We think this position untenable. In entering into a partnership firm, a married woman constitutes each member of the firm as her agent, and the liability for the firm debts is not based on the theory of principal and surety but on the relation of principal and agent, and at least to the extent of her interest in the firm property she is liable even on the contract of guaranty, and as to such property the statute restricting her liability as surety has no application. We have thus discussed all the questions raised in the pleadings, because we are unable to tell whether the trial judge refused to file the amended answer on the ground that it came too

late or because under the proof no defense was made out authorizing a pleading conformable thereto.

Wherefore, perceiving no error, the judgment is affirmed.