## Country Homes Magazine v. Hobbs' Administratrix.

(Decided May 3, 1932.)

WOODWARD, HAMILTON & HOBSON and WILBUR O. FIELDS for appellant.

SHACKELFORD MILLER, JR., for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

F. Heath Coggins, trading and doing business as Country Homes Magazine, brought this suit against Gertrude G. Hobbs, administratrix of the estate of Howard C. Hobbs, deceased, to recover the sum of $424. The trial before a jury, without instructions, resulted in a verdict and judgment for the defendant. Plaintiff has prayed an appeal.

The facts are these: Prior to March 14, 1925, appellant wrote Howard C. Hobbs a letter containing certain proposals. Before answering Hobbs requested a copy of appellant's magazine. On March 21, 1925, appellant wrote Hobbs that, while there was no obligation attached to the actual publishing of views, a charge was made to cover the cost of taking photographs and making engravings, and that the charge for each photograph taken by his artist was $5 and the charge for engravings made for publication was 75 cents the square inch. This letter was followed up by another letter dated April 9, 1925, calling Hobbs' attention to the fact that he had overlooked replying, and requesting an early reply. In response to his last letter appellant received the following letter from Hobbs:

> "Answering your letter of the 9th, it will be quite all right under your former proposal to take three or four views of my home and run it in your magazine. Our house faces southeast. We would like while you are taking views to take a few interiors showing some special floors, etc., that we have embodied in this house."

On April 13, 1925, appellant wrote Hobbs acknowledging receipt of his letter of April 11, and stating that they would arrange with their artist to take the views within a short time. On May 12, 1925, Hobbs wrote appellant to be sure to instruct his artist and photographer to call at his house before taking the pictures, "as we want them to get one or two inside views." On May 15, 1925, appellant acknowledged receipt of Hobbs'

letter of May 12, 1925, "in reference to illustrating views of your place in our magazine," and again called his attention to the fact that the cost of taking the photographs was $5 each, and of making engravings was 75 cents the square inch. This was followed by another letter dated June 22, 1925, calling Hobbs' attention to his failure to answer the letter of May 15, and asking for prompt advice. In answer to the last letter Hobbs wrote appellant on June 24 that his photographer had already been to his home and taken views. On July 30, 1925, appellant wrote Hobbs that he was sending under separate cover the photographs taken of his place, and advising him that they were finished prints to be kept. The letter further stated that inclosed therewith was a sketch made up for the engraver, and requesting its return if the sketch and arrangement were satisfactory. On August 29, 1925, Hobbs wrote appellant as follows:

"Upon returning home I find your letter of July 30th, together with picture view of our place. We would like to suggest a change in your plan and that is, show view No. 22 in the place of either 21 or 27, as marked on the copy with red pencil. When you make up your data on this spread we would like to supply you with information to be carried opposite No. 22 regarding the special type of Colonial Floor used in building this house as this is a new and very distinctive feature throughout the house."

On receipt of this letter appellant mailed Hobbs a bill for 23 photographs at $5 each, and for $309 for engraving cuts at 75 cents per square inch, making a total of $424. Evidently Hobbs was surprised by the amount of the bill, and on September 18, 1925, telegraphed appellant as follows:

"Bill received. Hold up work. Did not understand such charge. Read my letter April Eleventh."

On September 22, 1925, appellant wrote Hobbs telling him that, if he only selected 10 photographs for engravings, they could not make him pay for more than that number, and that he could return the 13 views if desired and deduct $65 from the photograph bill. The letter further advised him that he had been billed for the entire number of photographs owing to the fact that he did not say anything about returning any of them and they thought he wanted to keep the album complete. On

February 20, 1926, appellant wrote Hobbs that they had written him numerous letters and wasted a great deal of time and expense and he did not have the courtesy to drop them a line. Following this letter Hobbs seems to have written appellant on February 23 as follows:

"What is your proposal? I have never seen your magazine with any of the cuts in question. I am not going to pay your bill as rendered and will stand suit first, for my records and files I am told by my council justify my stand. If you want to be reasonable and change your ideas, I will be glad to hear from you; otherwise, crack your whip."

On March 1, 1926, appellant wrote Hobbs advising him that they were willing to make a deduction of $65 from the photograph bill, and a further deduction of 25 per cent from the engraving bill, making the net amount of the bill $231.75. Hobbs made no response to this letter and took no further steps in the matter. Four years later this suit was brought.

Counsel for appellant insist that appellant's motion for a peremptory instruction should have been sustained. On the other hand, it is insisted with equal earnestness by counsel for appellee that she was entitled to a directed verdict. There can be no doubt that the publication of the views in appellant's magazine was an essential part of the contract, and that appellant, who never completed the contract by publishing the views, is not entitled to recover unless the contract was unequivocally renounced by appellee. Paducah Cooperage Co. v. Arkansas Stave Co., 193 Ky. 774, 237 S. W. 412. Renunciation is predicated on the telegram of September 18, 1925, which reads as follows: "Bill received. Hold up work. Did not understand such charge. Read my letter April Eleventh." On behalf of appellee it is argued that the expression "Hold up work" was not a direction to "stop work" or even "discontinue work," but was a mere request to suspend work, and that the statement, "Read my letter April Eleventh," was an invitation for appellant to review the correspondence and advise appellee of his views in the matter before any further expense was incurred. The difficulty with this position is that Hobbs, by his letter of February 23, stated his final position, and thereafter refused to engage in any further discussion. We are therefore constrained to hold that the

telegram, coupled with his subsequent conduct, amounted to a renunciation of the contract, and excused appellant from further performance. In the circumstances appellant is entitled to recover, not at the rate of the contract prices, which are based on full performance, but for the reasonable value of the work actually performed pursuant to the contract. As we view it, there was never any contract to pay for the 23 photographs, or for all the engravings actually made. The only contract made by Hobbs is set forth in his letters of April 11, 1925, and May 12, 1925. In the former he authorized the taking of "three or four views of his home" and the taking of "a few interiors showing some special floors," etc. In his letter of May 12 he limited the inside views to one or two. In the circumstances we conclude that he contracted for six photographs and six plates, and this is the extent of his liability. It follows from what has been said that the trial court should have directed the jury to find for appellant the reasonable cost of making six photographs and six plates.

Wherefore the appeal is granted, and judgment reversed, and cause remanded for another trial in conformity with this opinion.