## Allen v. Wireman et al.

(Decided March 22, 1932.)

WHEELER & WHEELER for appellant.

WALTER R. PRATER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Some years ago Susie Allen, S. C. Allen, her husband, Proctor Wireman, N. N. Salyer, and Calloway Montgomery executed and delivered to the Salyersville National Bank their promissory note for $3,000. The note was renewed from time to time, and a payment of

$1,000 thereon was made. The last renewal was for $2,000. The note not being paid at maturity, the bank brought suit to recover thereon. Judgment was rendered in favor of the bank, but was afterward set aside on the ground that some of the defendants, including Susie Allen, were not before the court. On the vacation of the judgment, the action was dismissed. Thereafter Proctor Wireman, N. N. Salyer, and Calloway Montgomery paid the note and discharged the obligation to the bank.

This suit was brought by Proctor Wireman, N. N. Salyer, and Calloway Montgomery against Susie Allen to recover the amount paid to the bank on the ground that she was the principal in the note and they were sureties. An attachment was obtained and levied on a tract of land belonging to Susie Allen. In her answer she denied that she was the principal in the note, or that plaintiffs were her sureties, and pleaded that she and plaintiffs all executed the note as sureties for her husband, S. C. Allen, that each of the plaintiffs at the time he signed the note knew that the note was signed by her as surety for her husband only, and that she received no part of the benefits therefrom, and that by reason of section 2127, Kentucky Statutes, she was not liable on the note. From a judgment in favor of plaintiffs, Susie Allen appeals.

W. P. Carpenter, cashier of the Salyersville National Bank, deposed as follows: He negotiated a loan of $3,000 on notes signed by Susie Allen, S. C. Allen, Proctor Wireman, N. N. Salyer, and Calloway Montgomery. S. C. Allen first presented the note with himself as principal, and was told that the bank would not let him have the money as he had exceeded the limit. S. C. Allen said he would have his wife make herself principal. He returned in a short time with a note signed by his wife as principal, and the other makers as sureties. Thereupon the loan was made, and the proceeds, which were placed to the credit of S. C. Allen, were checked out by him. At that time S. C. Allen owed the bank about $5,000, and wanted $3,000 more. The note was carried on the books in the name of Susie Allen. Susie Allen did not negotiate or ask for the loan. On its face the note was signed by all as principals with the exception of Proctor Wireman. Proctor Wireman testified as follows: S. C. Allen brought the note to his place, and Susie's name appeared on the first line. He signed the

note on the representation of S. C. Allen that it was his wife's note, and that he and the other persons were all signing as sureties. S. C. Allen said that he already owed the bank $5,000 and needed more money, and that the bank had agreed to let him have the amount of the note by making his wife principal. He further said the bank would not let him have the money if he did not get it in Susie's name. At that time S. C. Allen was insolvent, and he would not have signed the note for him unless Susie Allen had been principal on the note. The testimony of Calloway Montgomery is as follows: He signed the note as surety for Susie Allen. S. C. Allen could not pay his debts, and he would not have signed as surety for him. Susie's reputation for solvency was good. Her name appeared on the note as principal. He did not receive any of the money for which the note was executed. He could not say whether or not Susie received any of the money. S. C. Allen never explained to him what he wanted with the money, but told him that Susie had land and was good. Prior to that time S. C. Allen owed him $2,400, and he had refused to go on notes for him. The word "surety" was not written after the name of any one but Proctor Wireman, but they signed as sureties. He did not believe that S. C. Allen told him that he wanted the money before he signed the note. He already knew that S. C. Allen owed the bank $5,000. He did not learn that S. C. Allen was getting the money until after they began lawing about it. He did not know whether Susie Allen was engaged in any business or not. Abe Wireman, son of Proctor Wireman, deposed as follows: Susie Allen sent the note by him to his father, Proctor Wireman, to be signed. Susie, N. N. Salyer, and Calloway Montgomery had already signed. Susie said that this would be the last time his father would have to sign it; that she was sorry and they would try to pay it off when it became due. This was long after the original note was made, and concerned the renewal of the note.

On the other hand, Susie Allen deposed as follows: She signed the note as surety for her husband. No one was present but her and her husband. He advised her that he wanted the money for his own use, that he already had a note in the bank, and that the bank said it would look better for her to sign it. She signed the note, left it lying on the table, and then went on about her

work. The note was renewed several times. She never sent the note to N. N. Salyer and Proctor Wireman to sign and renew. Her husband sent it. Each time the note was renewed she signed it and gave it to her husband. When she signed the note, it was already signed by her husband and the other parties. She never asked the bank for an individual loan, and received no part of the money. She did not know to whom the money was paid. Her husband got the money for his separate use and benefit. She knew he was getting it for himself, but did not know for what purpose he was getting it. She never asked any of the plaintiffs to sign the note. After their marriage, S. C. Allen took care of his own business, and she never had any business.

The testimony of S. C. Allen, the husband of Susie Allen, is as follows: He first discussed the loan with Will Press Carpenter, cashier of the Salyersville National Bank. Carpenter said he would let him have the money. He prepared the note as principal. Montgomery, Wireman, and Salyer signed the note with him. When they presented the note to the bank, Carpenter refused to make the loan in his name, saying that he had talked with the directors, and they thought it was best to carry the loan in the name of his wife, and asked him to have her sign, and some one else. He then took the note home and had his wife sign it. It was the same note which he had first presented to the bank. All the plaintiffs had already signed the note as sureties before it was ever presented to his wife. He never at any time acted as agent for his wife. His wife did not receive any part of the money. The proceeds of the note were placed to his credit and checked out by him. He borrowed the money to meet two $1,000 checks that he owed on completion of a well in Greenup county. These checks were drawn on the Salyersville National Bank. One was payable to Pearl Matthews, and the other to the Shure Shot Torpedo Company. Carpenter, the cashier, knew that the checks were outstanding, and that they had been presented to the bank for payment and turned down because of insufficient funds. He paid a credit of $1,000 on the note. His wife had nothing to do with the transaction except to sign her name to the note. Sometimes when the note was renewed his wife appeared as principal, and sometimes not. On the face of the note they all appeared as principal except Proctor Wireman.

Section 2127, Kentucky Statutes, reads as follows:

"Marriage shall give to the husband, during the life of the wife, no estate or interest in the wife's property, real or personal, owned at the time or acquired after the marriage. During the existence of the marriage relation the wife shall hold and own all her estate to her separate and exclusive use, and free from the debts, liabilities or control of her husband. No part of a married woman's estate shall be subjected to the payment or satisfaction of any liability, upon a contract made after marriage, to answer for the debt, default or misdoing of another, including her husband, unless such estate shall have been set apart for that purpose by deed of mortgage or other conveyance; but her estate shall be liable for her debts and responsibilities contracted or incurred before marriage . . . except as in this act provided."

The facts do not bring the case within the rule announced in Oliver v. Noe, 232 Ky. 809, 24 S. W. (2d) 592. There the wife was engaged in the acquisition and development of oil leases through her husband as agent, and gave her note for a one-third interest in the oil leases to be developed. It was held that, as the note was her independent obligation based upon a substantial consideration, it could not be avoided on the ground that she was a mere surety for her husband. Nor is the case of Tompkins v. Triplett, 110 Ky. 824, 62 S. W. 1021, 23 Ky. Law Rep. 305, 96 Am. St. Rep. 472, controlling. In that case the lender dealt with the wife through her husband as agent, believing that she alone was the borrower, and the person to be benefited, and having no knowledge that the husband was the real beneficiary. On the contrary, the case cannot be distinguished from Farmers' Bank of Wickliffe v. Beck (Ky.), 114 S. W. 1189. There the husband applied to the bank for a loan, but was refused. He was then told that he could have the loan on a note with his wife as principal, or that the loan would be made to her. Afterward he tendered a note signed by him and his wife with the wife's signature above his own, and the proceeds were placed to his credit on the bank's books. The wife did not apply for the loan, nor was she seen or consulted by the bank. The cashier knew that the husband was the only person to

be benefited by the note, and that the wife had nothing to do with the transaction except to sign the note. It was held that the husband was the actual borrower of the money and the real beneficiary of the loan, and the wife merely a surety, and that the device of placing the wife's signature above the husband's did not have the effect of making her the principal so as to evade section 2127 of the Statutes. In this case S. C. Allen, the husband, first presented the note with himself as principal, and was told that the bank would not let him have the money as he had exceeded the limit. Saying that he would have his wife make herself principal, he returned in a short time with the note signed by his wife as principal, and the other makers as sureties. The wife did not negotiate or ask for the loan. The loan was then made, and the proceeds which were placed to the credit of the husband were checked out by him. In the circumstances the cashier knew that S. C. Allen, the husband, was the actual borrower, and the real beneficiary of the loan, and that the placing of the name of Susie Allen, the wife, on the note as principal was a mere device to evade the statute, which we have repeatedly held cannot be done. It follows that the wife was the mere surety of her husband, and, no part of her estate having been set apart by deed of mortgage or other conveyance to secure the indebtedness, she was not liable thereon to the bank.

Nor is the situation different with respect to appellees, who also signed the note as sureties. One of them did not testify. One admits that he knew that S. C. Allen was getting the money. The other claims that he did not know who was to get the money, but signed the note on the representations of S. C. Allen that his wife was principal. Not only was no estoppel against appellant pleaded, but the evidence as a whole fails to show that S. C. Allen was appellant's agent, or authorized to make any representations on her behalf. Hence, when appellees, who were immediate parties, signed the note, they took the chances of its being shown that appellant was a mere surety on the note and therefore not liable. That being true, the petition should have been dismissed and the attachment discharged.

Judgment reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.