COOKE v. GLENN (two cases).
Nos. 1225, 1226.

District Court, W. D. Kentucky,
at Louisville.

May 6, 1948.

Amended Findings of Fact and
Conclusions of Law.
June 17, 1948.

Chas. I. Dawson and Bernard H. Barnett, both of Louisville, Ky., for plaintiff V. V. Cooke.

D. L. Street and Ogden, Tarrant, Galphin & Street, all of Louisville, Ky., for plaintiff Almond Cooke.

Sewell Key, Acting Asst. Atty. Gen., Andrew D. Sharpe and Lester L. Gibson, Sp. Assts. to the Atty. Gen., and David C. Walls, U. S. Atty., of Louisville, Ky., for defendant.

SHELBOURNE, District Judge.

The two cases above cited, were filed in this Court, No. 1225 by V. V. Cooke and No. 1226 by Almond Cooke, both against Seldon R. Glenn, as Collector of Internal Revenue for the District of Kentucky.

V. V. Cooke seeks to recover $53,720.25, exclusive of interest and Almond Cooke seeks to recover $61,644.84, exclusive of interest.

The sums sought to be recovered represent the deficiency assessment against the plaintiffs for the calendar years 1939, 1940 and 1941. The suits were filed November 1, 1946 and the principal question in each case is whether plaintiff's wife or the plaintiff himself was properly chargeable with the amount of income returned by the wife, as a partner for the years, or whether that income is properly taxable to the plaintiff under 26 U.S.C.A.Int.Rev.Code, § 22(a).

In the V. V. Cooke case, there is the additional question whether losses sustained by him in a farming and livestock raising and breeding venture were properly deductible.

The cases were consolidated for trial and were heard by the Court without a Jury May 1, 2, and 5, 1947.

Findings of Fact.

1. All of the facts stipulated by the parties are adopted and found as facts by the Court.

2. The plaintiffs, V. V. Cooke and Almond Cooke, are now and were, during each of the years involved in these proceedings, citizens and residents of Louisville, Jefferson County, Kentucky, and for each of the years here involved, they filed their respective income tax returns with the defendant, Seldon R. Glenn, who, for each of said years, was and now is, Collector of Internal Revenue for the Collection District of Kentucky with his office in Louisville, Kentucky, and for each of those years, 1939, 1940, and 1941, they paid to the defendant, the income tax shown on their said returns.

For the year 1939, the taxpayer, V. V. Cooke, reported net income of $40,317.36. The Commissioner of Internal Revenue de-termined his true net income to be $84,330.-19. For the year 1940, the taxpayer V. V. Cooke, reported income of $94,425.85. The Commissioner determined his income to be $109,196.25. For the year 1941, the taxpayer V. V. Cooke, reported income of $128,624.99. The Commissioner determined the income to be $171,603.16.

The taxpayer, Almond Cooke, reported in his return for 1939, net income of $14,798.28. The Commissioner determined his net income to be $40,965.63. For the year 1940, this taxpayer reported net income of $32,308.67. The Commissioner determined his net income to be $61,598.66. For the year 1941, the taxpayer reported net income of $59,013.07. The Commissioner determined his net income to be $121,790.30.

3. The adjustments made by the Commissioner in the income of V. V. Cooke and Almond Cooke related principally to the inclusion by the Commissioner in the return of each taxpayer of claimed partnership income by their respective wives in Cooke Pontiac and Broadway Chevrolet, as to Almond Cooke and Jennye Cooke, his wife; and in Broadway Chevrolet as to V. V. Cooke and Elva Cooke, his wife. Other changes related to disallowance of losses claimed on account of farm operations in the return of V. V. Cooke. These changes are shown in detail in the deficiency letters of the Commissioner in each case, which contain correct figures, provided the Commissioner of Internal Revenue is right in his contention that one-half of the net income in Broadway Chevrolet Company, a partnership, for each of the years is attributable to V. V. Cooke, and if V. V. Cooke is not entitled to deduct his farm losses for each of those years; and provided the entire net income of Cooke Pontiac Company, a partnership, for each of those years is properly attributable to Almond Cooke, and one-half of the net income of Broadway Chevrolet Company, is, properly attributable to Almond Cooke.

4. Prior to the calendar year 1930, V. V. Cooke was engaged in the automobile agency and parts business at Madisonville, Kentucky. In the year 1930, he moved to Louisville, Kentucky, and there engaged in the automobile agency, parts and service

business under the name of Cooke Chevrolet Company. Shortly after embarking upon this venture, he sold a half interest to his brother, L. R. Cooke, who, within about a year, resold same to V. V. Cooke. This business has been a very prosperous one from the beginning.

In 1935, V. V. Cooke established another automobile agency, parts and service business in the City of Louisville, Kentucky, which he conducted under the name of Cooke Pontiac Company.

About 1933, Almond Cooke entered the employ of V. V. Cooke as an automobile salesman representing the Cooke Chevrolet Company and developed into a remarkably successful salesman. In the fall of 1936, he was transferred to the Cooke Pontiac Company as salesman.

5. As of January 1, 1937, V. V. Cooke, the sole owner of Cooke Pontiac Company, sold to Almond Cooke and to his wife, Jennye P. Cooke, jointly, the assets of the Cooke Pontiac Company, and the right to use that name, for the sum of $18,790.68, and on January 7, 1937, executed a bill of sale for the assets by the following instruments:

"State of Kentucky
"County of Jefferson
"Know all men by these presents:
"That the ownership of Cooke Pontiac Company, the name, all assets, both tangible and intangible, is hereby transferred by me, the undersigned, to Almond Cooke and Jennye P. Cooke, for the consideration of eighteen thousand seven hundred ninety and 68/100 dollars ($18,790.68.)
"Almond and Jennye P. Cooke as purchasers, by accepting this bill of sale agree to assume all liabilities of said Cooke Pontiac Company as of January 1, 1937.
"Witness my signature as vender this 7th day of January 1937.
"/s/ V. V. Cooke
"Sworn to and subscribed before me this 7th day of January 1937.
"/s/ S. Otis Collier
"Notary Public, Jefferson
"County, Ky.
"My commission expires Nov. 7, 1938."

At the time of the sale, neither Almond Cooke nor Jennye P. Cooke had either the money or the means of raising the money with which to pay the purchase price and V. V. Cooke agreed to and did sell the property to them on credit, agreeing to look to each for one-half of the sale price. The undivided one-half interest in the assets sold to Almond Cooke was sold on his credit alone, and the undivided one-half interest sold to Jennye P. Cooke was sold on her credit alone, V. V. Cooke charging no interest against either of the joint purchasers.

V. V. Cooke did not take notes or any signed evidence of indebtedness from either Almond Cooke or Jennye P. Cooke, but did keep a memorandum record of the indebtedness and of the payments made thereon from time to time by each of the joint purchasers. The indebtedness incurred in the purchase of the Cooke Pontiac Company was repaid to V. V. Cooke from the income of the business prior to January 1, 1939.

6. At the time of the purchase by them of the Cooke Pontiac Company, Almond Cooke and his wife Jennye P. Cooke, agreed to operate same as a partnership, each contributing as his share of the partnership capital, the undivided one-half interest in the Cooke Pontiac assets purchased as above stated.

That partnership agreement is as follows:

"This Partnership Agreement made and entered into this 18th day of January 1937, by and between Almond Cooke and Jennye P. Cooke, both of Louisville, Jefferson County, Kentucky:

"Witnesseth:

"Whereas, the parties hereto have purchased the ownership of the Cooke Pontiac Company, located at 849 South Third Street, Louisville, Kentucky, from V. V. Cooke for the sum of Eighteen Thousand, Seven Hundred and Ninety Dollars and Sixty-eight Cents ($18,790.68), which purchase included all of the tangible and intangible property of the said Cooke Pontiac Company:

"Whereas, the parties hereto desire to enter into a partnership agreement covering the operations of the said Cooke Pontiac Company;

"Now, Therefore, in consideration of the mutual covenants contained herein, the parties hereto agree as follows:

"1. The parties hereto have agreed to, and do by these presents, become partners under the firm name and style of Cooke Pontiac Company with the principal office and place of business in Lousiville, Jefferson County, Kentucky.

"2. The purpose and business of said partnership shall be the buying and selling of automobiles, the conducting of a garage business, and the doing of all things incident to that type of business.

"3. Almond Cooke shall devote his entire time, skill, labor and experience to advancing and rendering profitable the interests and business of said partnership, and shall not engage in any other business or occupation on his individual account during the existence of said partnerhip. Jennye P. Cooke shall not be required to devote any of her time or personal attention to the business of said partnership.

"4. The entire management or control of said partnership shall be conducted by Almond Cooke. All contracts or agreements of any character shall be made and taken only in the firm name. Almond ·Cooke shall have the power and authority to sign contracts for the firm, conduct banking business for the firm, and to conduct generally all of the business necessary or incident to the said partnership affairs.

"5. For the management of the business of the Cooke Pontiac Company, Almond Cooke shall be paid a salary of Five Thousand Dollars ($5,000.00) per year before the profits of the business shall be divided between the parties hereto.

"6. Each partner agrees that all gain, profit, advantage and increase which shall arise by means of said partnership, shall be from time to time during the existence of said partnership, equally divided between them share and share alike, and all losses and expenses which may be incurred in the operation of said business, shall be paid and borne equally between them.

"7. Neither partner shall at any time sign the firm name, or pledge the firm's credit, on his own indebtedness or debt.

"8. There shall be kept at the principal office and place of business of said firm, at all times during the continuance of said partnership, true, accurate and complete books of account, in which shall be entered all transactions carried on by the firm. Each partner shall at all times have free access to said books belonging to the firm without interruption or interference by the other.

"9. Annually, an accounting shall be made of the profits or losses of the firm business. At said time the profits, if any, of said firm business shall be divided between the partners. But, at all times, a sufficient sum shall be left to the credit of the partnership, and not divided, sufficient to pay all debts and obligations of said partnership then unpaid and for the reasonable requirements of the business.

"10. This agreement shall be binding and in force for the period of ten (10) years from the date hereof, unless sooner terminated and dissolved by consent of the parties hereto, or by the death, bankruptcy, insolvency or disability of either party.

"11. At the time of the dissolution of the partnership, or any termination thereof, each to the other, or in the case of death, bankruptcy, insolvency or disability of either, the survivor to the personal representatives of the other shall make and render a true, just and final account of all partnership transactions and adjust and finally settle all matters relating thereto.

"12. It is mutually agreed that no changes, alterations, additions, modifications or qualifications shall be made or had in the terms or provisions of any article or articles of this agreement, unless the same shall be made in writing signed by each of the partners.

"In Witness Whereof the parties hereto have set their hands on the day and year first above written.

"/s/ Almond Cooke
"/s/ Jennye P. Cooke"

7. On June 17, 1939, another partnership was entered into by and between V. V. Cooke and his wife, Elva Cooke, and Almond Cooke and his wife Jennye P. Cooke, which was known as the Broadway Chevrolet Company.

The articles of partnership of the Broadway Chevrolet Company were as follows:

"One: The business of the partnership shall be conducted in the firm name and style of Broadway Chevrolet Company and the principal office and place of business shall be 1213 West Broadway, Louisville, Kentucky.

"Two: The business of the partnership shall consist of the operation of a garage at the above designated location, the buying and selling of automobiles, the repairing and storing of automobiles and in general, all the business conducted by automobile dealers and the operation of a garage.

"Three: V. V. Cooke agrees to, and does hereby, contribute to the capital of the partnership, the sum of Nine Thousand Eight Hundred and Forty-Four Dollars and Fifty Cents ($9,884.50), and each of the other partners Almond Cooke, Jennye Cooke and Elva Cooke agrees to, and does hereby, contribute to the partnership the sum of Nine Thousand Eight Hundred and Forty Four Dollars and Forty-Nine Cents ($9,844.49), a total sum contributed to the capital of the partnership of Thirty Nine Thousand Three Hundred and Seventy-Seven Dollars and Ninety Seven Cents ($39,377.97.)

"Four: Almond Cooke shall devote his time, skill, labor and experience in the conduct of the partnership business and in rendering profitable the interests of the partnership. V. V. Cooke, Elva Cooke and Jenny Cooke shall not be engaged in the active management of the partnership, but shall devote only so much of their time in promoting the interests of the partnership as may be requested by Almond Cooke and become necessary in the conduct of the partnership business.

"Five: For his services rendered in the active management of the partnership, Almond Cooke shall be paid a salary of Six Thousand Dollars ($6,000.00) per year in monthly payments of Five Hundred Dollars ($500.00) each, before there shall be any division of profits between the members of the partnership. Such salary of Almond Cooke shall be considered an expense of the operation of the partnership business, and such salary may be changed from time to time as mutually agreed upon by the unanimous consent of the parties hereto.

"Six: All contracts shall be made in the name of Broadway Chevrolet Company. Contracts on behalf of the partnership may be executed by either Almond Cooke or V. V. Cooke, but any contract executed in the firm name by either of such partners shall be binding upon the partnership.

"Seven: Each partner agrees that the net profits of the business of the partnership, after the payment of all expenses of the operation of the partnership business and taxes, shall be, from time to time, as mutually agreed upon, equally divided between them, share and share alike, and that all losses and expenses as may be incurred in the operation of the business shall be borne by them equally. That is to say, each partner shall be entitled to one-fourth ($\frac{1}{4}$) of the net profits of the business, and each partner shall be liable for one-fourth ($\frac{1}{4}$) of the debts and losses incurred in the business.

"Eight: Almond Cooke and V. V. Cooke shall each have the power to compromise any indebtedness due the partnership and any agreement of compromise or settlement entered into by either such partner shall be binding upon the partnership.

"Nine: Neither partner shall, at any time, sign the firm name, pledge the firm's credit, to secure the individual indebtedness of any member of the partnership, and the firm name and firm credit shall not be pledged to secure debts except those incurred in the operation of the partnership business.

"Ten: There shall be kept at the principal office and place of business of the partnership, accurate and complete books of account in which shall be entered all moneys received and disbursed by the partnership and all goods, wares, merchandise and other property bought and sold for account of the firm. It shall be the duty of Almond Cooke to see that accurate books of account are kept at all times, and that such books shall be available to each member of the partnership.

"Eleven: The bank account of the partnership shall be kept in such bank as may

from time to time be designated by the partners. Either Almond Cooke or V. V. Cooke shall have the power to sign checks on such bank account, but all checks drawn against the firm account shall be drawn in the partnership name of Broadway Chevrolet Company and signed by either Almond Cooke or V. V. Cooke.

"It shall be the primary duty of Almond Cooke to attend to and have charge of, the finances, moneys, and accounts of the firm, collect all bills and moneys due the firm, and make and prepare monthly statements of the same for the benefit of each partner.

"Twelve: At least semi-annually an account shall be made of the partnership affairs and presented to each member of the partnership. The accounting thus presented shall be binding upon each member of the partnership unless, within a reasonable time thereafter, a member of the partnership protests against the accounting presented and demands an audit of the firm's affairs.

"Thirteen: This partnership agreement shall continue in full force and effect until terminated by the mutual consent of the partners, or by operation of law.

"Fourteen: At the time of the· dissolution or termination of the partnership, each partner shall be entitled to share equally in the profits and assets of the partnership remaining after all debts and obligations of the partnership have been paid in full.

"Fifteen: Each of the partners has contributed to the capital of the firm, as hereinbefore set forth, but the individual indebtedness of any member of the partnership to any other member of the partnership is not provided for in this agreement, and this agreement does not purport to take care of the individual indebtedness of any member of the partnership to any other member of the partnership arising out of either the formation of this partnership, or any other business transactions. This agreement may be executed in several counterparts."

8. Upon taking of the inventory provided for in the contract, it was ascertained that the total purchase price to be paid amounted to $29,377.97, one-fourth interest of each partner thus costing $7,344.-49.

V. V. Cooke loaned to each of his three partners, the $7,344.49 required to pay for their respective undivided one-fourth interest in the Browder & Hoskins assets. The purchasers agreed that they each would contribute to the proposed partnership, as capital, his or her undivided one-fourth interest in the Browder & Hoskins assets and $2,500 of working capital, making the contribution of each to the partnership the equivalent in value of $9,844.49. V. V. Cooke also agreed and did lend to each of the proposed partners the $2,500 of working' capital they each agreed to contribute to the partnership.

9. At or about the time of the purchase of the Browder & Hoskins assets, a written contract was entered into between the Browder & Hoskins Realty Company and the four ·Cookes under which the latter leased the premises, formerly used by Browder & Hoskins Company, for use in their new partnership business. Upon the formation of the partnership, a statement as required by Section 365.110 KRS was prepared by Counsel, executed by the partners, and filed in the County Court Clerk's Office, Jefferson County, Kentucky.

In accordance with the partnership agreement, Almond Cooke was in active charge and management of the partnership business. V. V. Cooke and the two wives took no active part in the conduct of the partnership business, but they were each kept fully advised of its affairs and consulted from time to time in respect thereof.

10. The net earnings of the business were distributed in conformity to the partnership agreement, each partner receiving one-fourth thereof. Each of the wives maintained individual bank accounts, and the money received by Jennye P. Cooke, as her part of the earnings of Cooke Pontiac Company and as her part of the earnings of Broadway Chevrolet Company was deposited to her account. The money received by Elva Cooke, as her part of the earnings of Broadway Chevrolet Company was deposited to her individual account. Neither husband had the right to draw checks against, or otherwise control, the

bank account of his wife and he did not do so. The two wives exercised full and complete control of their respective receipts from the partnerships. They did not spend any of the money in paying household and family expenses which had theretofore been paid by their respective husbands, but they invested or spent same as they themselves determined. Neither Jennye P. Cooke, nor Elva Cooke participated in the management of the affairs of Broadway Chevrolet Company, nor did Jennye P. Cooke participate in the management of the affairs of the Cooke Pontiac Company, except in conferences with their respective husbands, which conferences usually were conducted in the evenings. Both wives had children and household cares consumed the greater part of their time and attention.

11. Almond Cooke, Jennye P. Cooke and Elva B. Cooke, from time to time, as they received income attributable to their respective interest in the partnership, made payments on their respective indebtedness to V. V. Cooke, hereinbefore set out. The debt of each to said V. V. Cooke has been fully discharged. Elva B. Cooke repaid the money lent to her by her husband entirely out of the earnings attributable to her interest in Broadway Chevrolet Company, and the same is substantially true as to Almond Cooke and Jennye P. Cooke, except that Jennye P. Cooke did pay $2,500 of her indebtedness out of earnings of Cooke Pontiac Company attributable to her interest therein, and which had been distributed to her from the earnings of the partnership.

Almond Cooke and his brother, V. V. Cooke, kept records in a "little book" which they each had. Almond Cooke did not put up security in the purchase of Cooke Pontiac; kept no records that would reflect how or when or in what amounts he repaid the indebtedness advanced by his brother for him and his wife, and which investments were made in Cooke Pontiac and Broadway Chevrolet Companies.

12. The business of the Cooke Pontiac Company was managed and controlled by Almond Cooke, from the time of the purchase of that company by Almond Cooke and Jennye P. Cooke until the purchase of the Broadway Chevrolet Company. Almond Cooke was paid a salary as provided by the partnership articles.

On and after June 17, 1939, the affairs of the Cooke Pontiac Company were managed actively by a Mr. Roach, an employed manager, who was paid a salary.

From the formation of the partnership of Broadway Chevrolet Company, its business was managed by Almond Cooke, as provided in the articles of partnership.

13. In the latter part of 1940, after consultation among the four partners in Broadway Chevrolet Company, it was determined the four of them would jointly purchase a tract of land on Lexington Road consisting of approximately 500 acres and known as "Gold Acres" and that they would use their respective shares of the earnings of Broadway Chevrolet Company, as same became available, to pay for that property, and the purchase was accordingly made, the deed being made jointly to the four partners, each of the four partners thereby becoming the owner of an undivided one-fourth interest in that property. Thereafter, portions of this acreage were sold and the proceeds of such sales were distributed equally among the four joint owners.

14. In 1935, V. V. Cooke purchased 50 acres of land on the Taylorsville Road, a few miles beyond the city limits of Louisville, Kentucky, and in 1936, he erected a residence thereon which was occupied by him and his family as their home until November 1946.

In 1937, he purchased 257 additional acres of land on the Taylorsville Road which was not contiguous to, but was in the neighborhood of the 50 acre tract and thereafter, and during each of the tax years here involved, he operated the 50 acres and the 257 acres together as one farming operation. He fenced off 10 acres of the 50 acre tract and treated same as land appurtenant to, and as a part of, his residence.

The 257 acre tract at the time it was purchased by Cooke, and during the time he owned same, had the ordinary fencing found on the ordinary farm in that com-

munity. Cooke himself put plank fencing around the 50 acre tract.

As soon as Cooke bought the 50 acre tract, he commenced farming operations thereon, raising such crops as rye, grass and hay and, when the 257 acre tract was acquired, he continued to raise the same character of crops and also stocked same with saddle horses, sheep, cattle and mules, and also bought and trained saddle horses for other owners. Some of the saddle horses were bred, raised and trained on the farm, others purchased from other owners and trained on the farm. Some of the mules were raised on the farm and some bought from outside sources. Cooke would break them and then sell them.

Cooke would buy ewes at the stockyards, breed them on the farm and sell the product of this breeding at the stockyards. He would also sell the wool from his sheep. He would buy white-face beef cattle at the stockyards, graze and fatten them on the farm and sell them at the stockyards.

The sheep and cattle purchased and handled by Cooke on the farm were not thoroughbred stock, but just such animals as are usually bought by farmers at the local stockyards.

The receipts from the saddle horse branch of the farming operations were greater than from any other one farming activity. In 1939, out of a total farm income of $5,872.69, $2,261.69 represented the income from saddle horses, and substantially the same situation obtained in 1940 and 1941.

Cooke purchased the farms, stocked same and conducted his farming operations for the purpose and with the intent of making money out of them. He conducted his farm in substantially the same way as farmers generally in that vicinity, who were engaged in the same farming activities, conducted their farming operations.

In 1939, the farming operations resulted in a loss of $10,849.03; in 1940, in a loss of $15,203.96 and in 1941 in a loss of $16,447.65. In arriving at these losses, no effect was given to any expenses attributable to the operation of the house and the 10 acres immediately surrounding same.

15. For each of the tax years after the acquisition of Cooke Pontiac Company by Almond Cooke and Jennye P. Cooke, including the year 1939, they made separate income tax returns and the return of each reflected one-half of the net income of the Cooke Pontiac partnership. After the formation of the Broadway Chevrolet Company partnership, V. V. Cooke and Elva B. Cooke made separate income tax returns for each tax year including the tax year 1939.

For the year 1939, and for each year subsequent thereto, the individual tax returns of Almond Cooke, Jennye P. Cooke, V. V. Cooke and Elva B. Cooke each reflected one-fourth of the net income of the Broadway Chevrolet Company partnership and the tax assessed against each was computed accordingly.

16. See amended findings of facts.

### Conclusions of Law.

I. This Court has jurisdiction of the subject matter of and the parties to these cases. 28 U.S.C. § 41(5), 28 U.S.C.A. § 41(5).

II. The burden is on the taxpayer to establish that the Commissioner's findings were erroneous and that the partnership is valid for tax purposes. Welch v. Commissioner 290 U.S. 11, 54 S.Ct. 8, 290 N.Y.S. 111, 78 L.Ed. 212; Commissioner v. Heininger, 320 U.S. 467, 475, 64 S.Ct. 249, 88 L.Ed. 171; Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135.

III. The intention of the parties and their good faith in joining together for the purpose of carrying on business and sharing in the profit or loss is a conclusion of fact to be determined from the testimony disclosed by their "agreement, considered as a whole, and by their conduct in the execution of its provisions." Commissioner v. Tower, supra; Drennen v. London Assurance Company, 113 U.S. 51, 5 S.Ct. 341, 28 L.Ed. 919; Cox v. Hickman, 8 H.L.Cases 268.

IV. If the wife, either invests capital originating with her, or substanti-

ally contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things, she may be a partner as contemplated by 26 U.S.C.A.Int.Rev.Code, §§ 181, 182. Compliance with one of these requirements is all that is necessary. Weizer v. Commissioner, 6 Cir., 165 F.2d 772.

■ V. Husband and wife may become partners and, as measured by the law of Kentucky, the partnerships of Cooke Pontiac Company between Almond Cooke and Jennye P. Cooke and Broadway Chevrolet Company, as between V. V. Cooke, Almond Cooke, Jennye P. Cooke and Elva B. Cooke, were valid. Wallace v. Wallace 224 Ky. 532, 6 S.W.2d 683; Memhard v. Gabrielsen, 224 Ky. 238, 5 S.W.2d 1070.

■ VI. Formal execution of articles of partnership does not create a partnership for income tax purposes, but the execution of articles of partnership is not decisive evidence of a purpose to evade taxes. The right of a taxpayer to decrease the amount of what otherwise would be his taxes or altogether avoid them by means which the law permits, is a legal right. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355.

In the recent case of Lawton et al. v. Commissioner, 6 Cir., 164 F.2d 380, 385, Judge Simons, speaking for the Court of Appeals said: "This is surely not a mere euphemism to trap the unwary taxpayer."

VII. The prohibition in the articles of partnership, preventing Jennye P. Cooke from writing checks on the partnership funds of Cooke Pontiac Company and in the articles of partnership of Broadway Chevrolet Company prohibiting both Jennye P. and Elva B. Cooke from writing checks against the deposit of that company, were agreements similar to those found under many partnership contracts, and tend to business-like management of the partnership affairs. The fact that the partners did not have meetings at the garages in down-town Louisville does not indicate any lack of participation in the management of the affairs of the partnerships by the wives, for as said by the Sixth Circuit in the Lawton case supra, where a similar situation was involved—"* * * it would be strange, also, if in so coordinated a family activity, policies involving management, sales and expansion were not discussed and decisions made at the family fireside, in which all of the family stockholders of the corporation participated."

■ VIII. The capital investment by Jennye P. Cooke in the Cooke Pontiac Company and in the Broadway Chevrolet Company originated with her.

In the case of S. Kenneth Alexander v. Commissioner, 6 Tax Court 804, the partnership business was owned by the husband and his Uncle, the husband owning three-fourths interest and the Uncle one-fourth interest. The husband's wife purchased the one-fourth interest from the Uncle for $35,000. $30,000 of this purchase price was borrowed by the wife from a bank upon which loan the husband was surety and the latter pledged collateral as additional security. The Tax Court held her interest in the partnership valid for income tax purposes.

The Commissioner, in the instant cases, is not contending that V. V. Cooke should be taxed with the income on the partnership interests of Jennye P. Cooke and the record shows conclusively that Almond Cooke did not furnish any of the capital invested in either partnership venture by Jennye P. Cooke. See also Overton v. Commissioner, 6 Tax Court and Schreiber v. Commissioner, 6 Tax Court 707, affirmed, 6 Cir., 160 F.2d 108; Durwood v. Commissioner, 8 Cir., 159 F.2d 400.

IX. See amended conclusions of law.

■ X. As to the farm losses of V. V. Cooke. Section 23 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 23, provides for deduction of ordinary and necessary expenses of carrying on a trade or business. Treasury Regulation 103 provides that if an individual owns and operates a farm, in addition to being engaged in another trade, business or calling and sustains a loss from such operation, then the amount of loss sustained may be deducted from gross income received from other business, provided the farm is not operated for recreation or pleasure.

It is claimed by the Commissioner that the farming venture of V. V. Cooke was purely a hobby and was engaged in for recreation and pleasure. With this, I do not agree.

The breeding, raising and training of saddle horses is a recognized industry. The background and early years of V. V. Cooke's life, as reflected in the record, are such as would instill a desire to engage in farming and stock-raising and there is nothing in this record to indicate that this venture was a social diversion or the indulgence of a hobby. Commissioner v. Field, 2 Cir., 67 F.2d 876; Commissioner v. Widener, 3 Cir., 33 F.2d 833.

### Amended and Substituted Findings of Fact and Conclusions of Law.

This cause coming on for hearing upon the motion of V. V. Cooke that the Court's written Findings of Fact filed herein be amended and supplemented as set out in said motion, and that certain of the Conclusions of Law made by the Court herein, and set out in said motion be withdrawn, and that there be substituted therefor conclusions of law as set out in said motion; and the Court, having heard argument of Chas. I. Dawson, Counsel for Plaintiff V. V. Cooke, in support of said motion, and of Honorable Randolph Brown, Assistant United States Attorney, appearing for defendant, in opposition to said motion, and being advised makes the following addition to Finding 7:

On or about June 14, 1939, and prior to the formation of the partnership of Broadway Chevrolet Company, Almond Cooke, Jennye P. Cooke, V. V. Cooke and Elva B. Cooke purchased from Browder and Hoskins Company the physical assets of that concern, said purchase being evidenced by a written contract reading as follows: "This agreement made in the City of Louisville State of Kentucky, on June 14, 1939, by Browder Hoskins Company, a corporation, duly created, organized and existing under and by virtue of the laws of the State of Kentucky, and having its principal place of business at Louisville, Kentucky, (herein called first party), and V.V. Cooke, Almond Cooke, Elva B. Cooke and Jennye P. Cooke, of Louisville, Kentucky, (herein called second parties).

### Wherein it is Mutually Agreed as Follows:

"1st—That the first party hereby sells and the second parties hereby purchase from the first party, at the prices hereinafter specified, office furniture, fixtures and equipment, tools, show-cases, machinery, shop equipment, cranes, chain blocks, now used in first party's business at 1213 W. Broadway, Louisville, Kentucky, the prices to be paid by the second parties to the first party for the same to be 50% of the cost of same as said cost is now shown on the books of the first party; all Chevrolet parts and accessories now located at 1213 W. Broadway, the price to be paid by second parties to first party for the same to be the list price of Chevrolet Motor Division to Chevrolet Dealers, less the regular discount of 40%, allowed Chevrolet Dealers; all new 1939 Chevrolet Motor automobile trucks and passenger cars now owned by first party, the price to be paid by second parties to be the cost of same to Browder & Hoskins Company at Louisville, Kentucky; service cars owned by Browder & Hoskins Company, the price to be paid by second parties for same to be the cost of said service cars to Browder & Hoskins Company; Courtesy Car owned by first party, the price to be paid by second parties for same to be the original cost of same to first party; all neon signs on and in building at 1213 W. Broadway, Louisville, Kentucky, (excepting those containing solely the name, 'Browder & Hoskins Co.') the price to be paid by second parties for same to be 50% of the original cost to Browder & Hoskins Company; all grease, oils and gasoline located at 1213 W. Broadway, the price to be paid by second parties for same to be the actual cost of same to first party; all electrical bulbs in the building at 1213 W. Broadway, the price to be paid by second party for same to be 50% of present replacement cost.

"2nd—An inventory of all of the above personal property being sold by first party to second parties is to be taken before June 17, 1939, said inventory to be taken by

one or more representatives of the first party and of the second parties, to be agreed upon.

"3rd—Said inventory is to be completed as soon as possible and immediately upon the completion of said inventory, the second parties agree to pay to the first party in cash, the total amount of the purchase price for the above personal property in accordance with the prices set out above.

"In Witness Whereof, the first party has signed this instrument by its President thereunto duly authorized, and the second parties have hereunto signed their names, this the day and year first above written.

> "Browder & Hoskins Co., a Corporation
> "By /s/ R. H. Hoskins,
> "President
> "/s/ V. V. Cooke
> "/s/ Elva B. Cooke
> "/s/ Almond Cooke
> "/s/ Jennye P. Cooke."

By virtue of that contract of purchase, each of the four Cookes became the unconditional owner of an undivided one-fourth interest in the assets set out in said contract and continued to be, and was, such owner at the time of the formation of the Broadway Chevrolet Company partnership.

Finding No. 16 of the original Findings of Fact filed herein is amended to read as follows:

16. The Court finds as an ultimate fact that Almond Cooke and Jennye P. Cooke were each equal partners in the partnership of Cooke Pontiac Company, each contributing to the partnership capital one-half of the Cooke Pontiac assets purchased jointly by them from V. V. Cooke, and that one-half of the net income earned by that partnership each year belonged to, and was received by, Jennye P. Cooke, and one-half belonged to, and was recieved by Almond Cooke, and in that proportion they were liable for Federal income tax in respect thereof.

The Court further finds an ultimate fact that Almond Cooke, Jennye P. Cooke, V. V. Cooke and Elva B. Cooke were equal partners in the partnership firm of Boardway Chevrolet Company, each contributing to the capital of that partnership an undivided one-fourth interest in the assets purchased by the four of them from Browder & Hoskins Company and $2,500 in cash and as such equal partners, each of them was the owner of, and entitled to and did receive, one-fourth of the net income of that partnership each year, and were each individually liable for federal income taxes in respect of the income attributable to their respective interest.

Jennye P. Cooke invested in the assets of Cooke Pontiac Company and Broadway Chevrolet Company, capital originating with her, in that same was invested or borrowed by her from V. V. Cooke and was not loaned to her or contributed for her by her husband Almond Cooke.

Elva B. Cooke invested in the Broadway Chevrolet Company money borrowed from V. V. Cooke, her husband, but the money thus borrowed was contributed by her to a new business in the same proportion as that contributed by the other partners. Her husband did not lend the money to be placed in a business in which he had an interest, but, she, like her husband and the other partners, would have lost her investment had the business been a failure.

Amended and Substituted Conclusions of Law.

The Court withdraws Conclusion of Law No. IX originally filed herein, and substitutes in lieu thereof the following:

IX. Although the capital contributed by Elva B. Cooke to the partnership of Broadway Chevrolet Company originated with her husband V. V. Cooke, the amount borrowed was contributed to a new venture in the same proportion as V. V. Cooke, Almond Cooke and Jennye P. Cooke, the other partners, and in that proportion Elva B. Cooke is liable for federal income taxes on the portion of the earnings of said partnership attributable to her one-fourth interest.

The Court withdraws the final literary paragraph of the Conclusions of Law heretofore filed herein reading as follows: "Therefore, the plaintiff Almond Cooke is entitled to recover taxes paid by him on the partnership interest of Jennye P. Cooke in the partnership of Cooke Pontiac Company

and Broadway Chevrolet Company and V. V. Cooke is entitled to recover on the farm losses for the three years in question, but is not entitled to a recovery of the income taxes assessed against him by the Commissioner representing income on the interest of Elva B. Cooke in Broadway Chevrolet Company"—and substitutes therefor the following:

Therefore, the plaintiff Almond Cooke is entitled to recover income taxes assessed against and paid by him on that portion of the net earnings of Cooke Pontiac Company and Broadway Chevrolet Company attributable to the interest of Jennye P. Cooke in those partnerships; and the plaintiff V. V. Cooke is entitled to recover income taxes assessed against and paid by him on that portion of the net earnings of Broadway Chevrolet Company attributable to the one-fourth interest of Elva B. Cooke therein, and he is also entitled to recover the deficiency in income taxes assessed against and paid by him resulting from the disallowance by the Commissioner of the losses sustained by him in the operation of his farm for the years involved herein.