## ROUGHAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6442.

United States Court of Appeals
Fourth Circuit.

Argued July 3, 1952.

Decided July 31, 1952.

C. F. Rothenburg, Washington, D. C. (Charles D. Hamel, Lee I. Park, and Hamel, Park & Saunders, Washington, D. C., on the brief), for petitioner.

S. Dee Hanson, Sp. Asst. to Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., and Harry Baum, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a decision of the Tax Court of the United States sustaining a deficiency assessment against the taxpayer on income taxes alleged to be due for the years 1944 and 1945 in the respective amounts of $218,762.80 and $63,816.75. This deficiency was based on the Commissioner's refusal to recognize the taxpayer's parents, wife, and son as partners for federal income tax purposes during the years in question. The Commissioner included all the business income of the partnership in 1944 and 1945 in the taxpayer's gross income, and the Tax Court upheld this determination.

The pertinent facts, which were stipulated, are substantially as follows. In 1943 the taxpayer had a chance to buy a rather large business in Frederick, Maryland, at a low price and only a small outlay of cash. The opportunity came about through his employment with Schwarze Electric Corporation. A group of individuals from Chicago, who had bought the stock of the corporation, obtained an option to acquire the stock of Price Brothers, Inc., located at Frederick, Maryland, which manufactured parts for electronic devices. The taxpayer was sent to Frederick to represent them, and after the Chicago group lost interest in the venture, they suggested that the taxpayer buy the business from them.

In order to take advantage of this opportunity, the taxpayer formed a limited partnership under Maryland law with his wife, son and parents, and the business was bought in the name of the partnership. At this time the taxpayer's son was in his last year of college. At the beginning of 1944 he was inducted into the Navy and remained there throughout the taxable years in question. The taxpayer's parents were seventy-five and seventy-one years old respectively, and the father had retired from work in 1926. They lived in Toledo, Ohio, owned their own home there, but had negligible other assets. The taxpayer's wife had no property of her own but held personal property and a bank account in joint ownership with her husband.

The instrument which the above parties executed provided that the taxpayer was the sole "general partner" and the others were "limited partners;" that the limited partners were to take no part in the management or control of the business; that the partnership capital was $17,500, of which $3,500 was to be contributed by each partner; that the interest of each partner and his share of the profits and losses was twenty per cent, except that the shares of the limited partners in losses were not to exceed their capital contributions; that no limited partner could withdraw any part of the capital; and that the partnership was to end on the death or retirement of the taxpayer but not of one of the other partners. A supplemental instrument provided that the taxpayer was to receive a salary of $18,000 per year for his services in conducting the business. This was later increased to $25,000 per year.

The capital contribution of $3,500.00 was reflected by a demand promissory note executed by each partner. $1,600 was first credited against each of these notes by means of $8,000 which the taxpayer acquired from Schwarze Company in a settlement of his employment contract. The remaining balance on the notes was later fully paid out of the profits of the business.

On the same day that the capital contributions were made, the partnership contracted to purchase the Price business for $169,910.03, payable $94,193.86 in cash and the balance in three notes due December 31, 1943, and secured by a purchase money mortgage. The only cash coming from any partner in this purchase was the $8,000 which the taxpayer had received in his employment contract settlement. The remaining cash came from bank loans and money realized from the assets and operations of the purchased business. At that time, the Tax Court found that the business could have been operated on a sounder margin if additional funds had been invested but none of the partners made any contribution of capital to meet this condition.

None of the partners, other than the taxpayer, contributed any services to the partnership during 1944 and 1945, and none of them, except the taxpayer, exercised any control over, or participated in, the operation or management of the business. Indeed, as the Tax Court found, none of them was in a position to do so, the son being away at college and later in service, and the wife and parents having had no suitable business experience which would qualify them to render such services or participation. Moreover, only the taxpayer had the power to sign checks against the partnership funds.

On March 11, 1944, the taxpayer and his wife jointly bought a residence in Frederick for $19,500 as tenants by the entirety, paying for it out of withdrawals from

the profits of the business aggregating $22,000. The wife also withdrew $2,000 to buy a lot adjoining the residence. The taxpayer and his wife opened a joint bank account in Frederick and the taxpayer also opened some separate accounts in his own name. The son also had a separate account in which was deposited $100 to $200 per month from the partnership profits.

The partnership was on a fiscal year and accrual basis, and withdrawals from the net profits for the fiscal year ending October 31, 1944, for purposes other than payment of the personal taxes of the partners, totaled $19,028.68 for the taxpayer, $15,500 for his wife, $2,950 for the son, $1,000 for the father and $1,100 for the mother. For the period from November 1, 1944, to December 31, 1945, the withdrawals other than for personal taxes amounted to $9,100 for taxpayer, $2,675 for the wife, $2,250 for the son, $4,550 for the father and $4,950 for the mother. None of the withdrawals by the parents were ever deposited in the personal accounts of the taxpayer or his wife, and none of the withdrawals by persons other than the taxpayer were used to pay his personal obligations.

On December 31, 1945, the assets of the partnership were transferred to a newly formed corporation and the stock of the corporation was issued to the partners in accordance with the credit balances in the capital accounts appearing on the books of the business.

■ On the basis of the foregoing facts, the Tax Court concluded that "petitioner, his wife, his son and his parents did not in 1944 and 1945 intend, in good faith and with a business purpose, to join together for the purpose of carrying on as a partnership the business known as Price Brothers Company." We think that the Tax Court properly applied the test of family partnerships as set forth in C. I. R. v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, and reached the correct conclusion. As the Culbertson case stated it, this test is whether, in the light of all the facts and circumstances in each case "the parties in good faith and acting with a business purpose intended

to join together in the present conduct of the enterprise." See 337 U.S. at page 742, 69 S.Ct. at page 1214. And since this question is one of fact, no one circumstance being conclusive, the Tax Court's determination will not be disturbed unless it is clearly erroneous. Harkness v. C. I. R., 9 Cir., 193 F.2d 655, certiorari denied 343 U.S. 945, 72 S.Ct. 1040, 1041; Feldman v. C. I. R., 4 Cir., 186 F.2d 87; Collamer v. C. I. R., 4 Cir., 185 F.2d 146; Morrison v. C. I. R., 2 Cir., 177 F.2d 351.

■ The present partnership has a factual atmosphere which strongly supports the Tax Court's decision. None of the alleged "limited" partners here made any real capital contribution to the partnership. The notes they paid in were satisfied in part by the cash the taxpayer received in settlement of his employment contract and the balance paid from the profits of the business. Nor did any of the partners, aside from the taxpayer, participate in the management of the business or contribute vital services to it. The taxpayer alone had control and management powers, both in practice and from the very terms of the partnership instrument. Moreover, the taxpayer alone had authority to draw checks, and only a small part of the profits attributed to the members of his family as partners was distributed to them for any purpose other than payment of the individual taxes applicable to such profits. While such factors are not conclusive, nevertheless "a court's determination that the services contributed by a partner are not 'vital' and that he has not participated in 'management and control of the business' or contributed 'original capital' has the effect of placing a heavy burden on the taxpayer to show the bona fide intent of the parties to join together as partners." Commissioner v. Culbertson, supra, 337 U. S. at page 744, 69 S.Ct. at page 1215.

To overcome this burden the taxpayer must fill the hollow mold of form with proof of economic substance and reality. See Collamer v. C. I. R., 4 Cir., 185 F.2d 146; Ritter v. C. I. R., 4 Cir., 174 F.2d 377; Moore v. C. I. R., 4 Cir., 170 F.2d 191, certiorari denied 337 U.S. 956, 69 S.Ct. 1528, 93 L.Ed. 1756; Economos v. C. I. R.,

4 Cir., 167 F.2d 165, certiorari denied 335 U.S. 826, 69 S.Ct. 53, 93 L.Ed. 380. This the taxpayer has not done. Nowhere in the record can we find any convincing indicia of business motive, good faith intent, or anything else that might erase the surface impression of a tax dodge. On the contrary, all the evidence points to that conclusion. The inclusion as partners in a business venture of one's aged parents, a son who is away at college and later in service, and a wife with no similar business training, none of whom have any appreciable property of their own, is not susceptible to naive inferences in the income tax field.

There is nothing in the statute or controlling decisions which justifies the taxpayer's contention that the above principles and conclusions have no application to family partnerships formed to acquire a new business. The test is still the same and the proof of reality no less required. That the members of a taxpayer's family purport to become his partners simultaneously with his purchase of a business, rather than afterwards, need not be indicative of a greater degree of the necessary good faith intent. Indeed, in the Culbertson case itself the partnership interest which the taxpayer-father conveyed to his sons was not an interest which he theretofore owned but one which he contemporaneously purchased from his former partner; yet there is nothing in the Supreme Court's opinion to intimate that the principles which it outlines may for that reason be altered. In the present case, the Tax Court aptly summed up the objections to the taxpayer's contention as follows:

"While it may be that the acquisition of a new business contemporaneously with the formation of the partnership is a relevant consideration, it is not necessarily a pivotal one. For, it is wholly possible that a prospective purchaser of a business may have sufficient foresight to anticipate substantial returns therefrom and may deliberately undertake in the first instance to channel the profits through a partnership arrangement, to members of his immediate family. And whether such partnership will be recognized for tax purposes depends upon the applications of the principles announced and applied in the Lusthaus, [Lusthaus v. C. I. R., 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679] Tower, and Culbertson decisions. In the present case petitioner knew that he was making a highly advantageous purchase. Although it was speculative in character, he was undoubtedly aware of the possibilities of handsome returns therefrom."

Nor is there any substance in the taxpayer's assumption that a "limited" family partnership is in any way entitled to preferential treatment. A limited partnership may certainly be given effect taxwise where it meets the necessary factual requirements but it must pass through the mill of scrutiny the same as any other. See C. I. R. v. Tower, 327 U.S. 280, 66 S.Ct. 1532, 90 L.Ed. 670; Stanback v. Robertson, 4 Cir., 183 F.2d 889, certiorari denied 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654. And it can be argued that the very nature of a limited partnership, in that it prohibits the limited partners from engaging in the conduct of the business, makes the taxpayer's case even weaker.

The taxpayer relies heavily upon the cases of Stanchfield v. C. I. R., 8 Cir., 191 F.2d 826, and Cooke v. Glenn, D.C., 78 F.Supp. 519, affirmed per curiam, Glenn v. Cooke, 6 Cir., 177 F.2d 201, but we find nothing in these two cases to support his position here. The Stanchfield case, which involved a husband-wife partnership, is readily distinguishable on its facts. There the wife contributed capital of her own to the business, was authorized to sign checks on behalf of the partnership, had dominion over her share of the profits, and was equally liable with her husband for losses of the partnership. The Cooke case may also be distinguished on the capital contribution ground, and in any event is not a reason for reversal of a contrary finding of fact here.

The decision of the Tax Court is, accordingly, affirmed.

Affirmed.