T. M. STANBACK, T. M. Stanback and Ada M. Stanback, Fred J. Stanback, Fred J. Stanback and Elizabeth C. Stanback, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 7855.

United States Court of Appeals Fourth Circuit.

Argued April 21, 1959.

Decided Nov. 3, 1959.

As Amended Nov. 20, 1959.

J. Gilmer Korner, Jr., Washington, D. C., and H. Gardner Hudson, Winston-Salem, N. C. (Jules G. Korner, III, Washington, D. C., Vaughn, Hudson, Ferrell & Carter, Winston-Salem, N. C., and Blair, Korner, Doyle & Worth, Washington, D. C., on brief), for petitioners.

Carter Bledsoe, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Attorneys, Department of Justice, Washington, D. C., on brief), for respondent.

Before HAYNSWORTH, Circuit Judge, and HOFFMAN and BOREMAN, District Judges.

HAYNSWORTH, Circuit Judge.

Here we deal with the taxation of the income of a family partnership during years preceding 1951. Involved are questions of collateral estoppel to relitigate the tax recognition of the partnership agreement and of the Commissioner's duty to tax capital earnings proportionately to the owners of the capital.

The taxpayers, two brothers, had a proprietary medicine business which they

conducted as partners. In 1937 and 1938, each transferred an undivided six per cent interest in the partnership to each of three trusts he had created for the benefit of his wife and minor children.[1] At the time of the initial transfer, a new limited partnership, valid under, and for the purposes of, state law, was created, in which the taxpayers were the general partners and the trustees of the several trusts were limited partners. Each partner's participation in income was proportionate to his capital interest, nothing being allocated to the general partners for their personal services.

Gift tax obligations which arose upon these transfers were settled after the Commissioner had increased the reported values of the transferred interests.

For the tax years 1938 and 1939, the Commissioner attributed all of the partnership income to the taxpayers and assessed deficiencies accordingly. In the Tax Court, the Commissioner's position was that the trusts were invalid for tax purposes under the Clifford doctrine.[2] The Tax Court disagreed,[3] and the Commissioner did not press his contention further.

■ For the tax year 1941, however, the Commissioner again assessed deficiencies based upon a reallocation of all partnership income to the taxpayers. This time, the Commissioner's theory was that the partnership, rather than the trusts, was not entitled to tax recognition. Recognizing the tax validity of the trusts, he contended there was no bona fide intention that the trustees should be partners in the conduct of the proprietary medicine business. In actions for refund, the question of the intention of the parties when they entered into the partnership agreement, which arose under Culbertson,[4] was submitted to a jury. The jury found for the Government. We affirmed,[5] holding there was evidence to support the jury's verdict and that the previous decision of the Tax Court on the Clifford question did not create a collateral estoppel upon the Government so as to prevent its questioning the right of the partnership to tax recognition.[6]

For the tax years 1943–49, the taxpayers contest the Commissioner's assessments upon the grounds (1) that our earlier decision in Stanback was wrong, and (2) that, in any event, the trusts should be recognized for tax purposes as the owners of the income which their capital interests produce. The Tax Court found a collateral estoppel which prevented relitigation of the first question,

---

1. In the aggregate a 36% interest was thus transferred to the trustees, the taxpayers each retaining a 32% interest.

2. Helvering v. Clifford, 309 U.S. 331, 60 S. Ct. 554, 84 L.Ed. 788. The Commissioner's position was that the settlors had retained such control of the corpus and had such prospect of indirect enjoyment of trust income, that the corpus should be treated for tax purposes as owned by the settlors. The partnership agreement was involved only to the extent it bore upon the question of the settlors' retention of control of trust corpus and their control of the payment to the trusts of trust income.

3. Wachovia Bank and Trust Company, et al., Tax Court Memorandum, Docket Nos. 1899–1902, filed June 22, 1944. The Tax Court held that the retained controls were insufficient to bring these trusts within the Clifford rule.

4. Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659.

5. Stanback v. Robertson, 4 Cir., 183 F.2d 889.

6. When a tax question has been fully litigated and settled with respect to one tax year, the doctrine of collateral estoppel is properly invoked to prevent repetitious relitigation of the same question when it arises in other tax years of the same taxpayer. The doctrine is only a means of prevention of contentious reargument. It should not be employed as an instrument for the perpetuation of injustice. It has no place if the relevant facts or applicable legal principles are unlike those considered in the earlier case. Thus this court held in Stanback v. Robertson that the Tax Court's resolution of the Clifford question for the tax years 1938 and 1939 did not foreclose litigation of the Culbertson question for the tax year 1941, for the relevant facts and the applicable legal principles were not the same.

but agreed in principle with the alternative contention, though it limited annual recognition of trust income to ten per cent of the gift tax valuation of the trusts' capital interest plus ten per cent of the trusts' interest in a surplus capital account which had been created after formation of the limited partnership and prior to the period in question.

The opinion of the Tax Court [7] contains an elaborate and careful discussion of the collateral estoppel question with which we agree in principle. But the Tax Court also found that the trusts collectively are the actual owners of an undivided 36% interest in the partnership and recognized a limited amount of income as being attributable and taxable to the owners of those capital interests. The finding, supported by the testimony and uncontested here, makes applicable rules which require avoidance of the bar of collateral estoppel and a holding that the partnership is valid or a holding, which reaches the same result, that the investor is entitled to the fruits of his investment and should not be limited to that portion of the fruit which a trier-of-fact considers a reasonable return upon the original investment.[8]

Commissioner v. Culbertson [9] overturned the inflexible, but objective, tests many courts had applied to determine the validity of family partnerships. The absence of fresh capital and of new vital services was no longer to be treated by the lower courts as decisive. Answers were to turn upon a subjective test, the true intention of the parties. In most of the cases in which the old standards were not met, the trier-of-fact was permitted, but not required, to draw an ultimate inference favorable to the taxpayer. Culbertson offered hope of tax recognition of many family partnerships, but did not supply predictable tax consequence to present transactions.

The Tax Court and other federal courts have not been uniformly liberal in applying the Culbertson rule. Perhaps a restrictive approach was influenced by the fact that in many cases, as here, the partnership agreement gave the partner having a donated capital interest a participation in profits having no apparent, or reasonable, relation to the earnings of his capital. Unconditional recognition of such a partnership and an allocation of earnings in accordance with the agreement would result in a diversion of current income from the one who earned it to one who did not, a violation of a fundamental principle of taxation.

It has long been recognized, however, that the earnings of capital should be taxed to the real owner of the capital who receives the income, rather than to some other.[10] Whether one may be said to be technically a partner, if he is the real owner of an undivided interest in a business, earnings properly attributable to that interest should be taxed to him.[11] If he be the true owner of the interest, it matters not that the interest was given

7. 27 T.C. 1.

8. Blair v. Commissioner, 300 U.S. 5, 57 S. Ct. 330, 81 L.Ed. 465; Wofford v. Commissioner, 5 Cir., 207 F.2d 749.

9. 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659.

10. Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465. The taxpayer there was an income beneficiary of a trust. By assignments, valid under state law, he had transferred portions of his interest to his children. The Supreme Court held that, since the assignees, under state law, were the owners of the income, the income they owned must be taxed to them and could not be included in the taxable gross income of their assignor. The owner of capital who receives and retains the income it produces is the owner of that income, which under Blair must be taxed to him alone.

11. Wofford v. Commissioner, 5 Cir., 207 F.2d 749; United States v. Atkins, 5 Cir., 191 F.2d 951. As the Tax Court said in German, 2 T.C. 474, " * * * it follows as a matter of law that the said income is divisible between them for Federal income tax purposes because of their undivided rights in and to the business whether the basis of those rights be that of partners or not."

to him, as the Tax Court recognized in this case.

■ In 1951, Congress legitimatized family partnerships.[12] To partnerships in which capital is a material income producing factor, it applied the basic rule of Blair v. Commissioner. If one owns an interest in such a partnership, he must be recognized as a partner though he acquired the interest as a gift, but partnership earnings may be reallocated to attribute reasonable compensation and a proportionate capital return to the donor of the interest.

Though the Congressional Committees expressed the opinion that the statute was a declaration of existing law, they made it clear it was an application of the principle that income from property should be attributed for taxation to the owner of the property.[13] It was not a codification of the Culbertson rule, as generally applied in the lower courts, for that rule was concerned with the recognition of partnership agreements,

not with the taxation of investment income to the owner of the investment.

Under the influence of the new statutory approach, applicable to tax years after 1950, the Commissioner in 1952 restated his position respecting earlier tax years.[14]

Mim. 6767, applicable to years prior to 1951, is an elaboration of the statutory approach of the Revenue Act of 1951. Where capital is a material income producing factor, earnings of the family partnership are to be attributed by the Commissioner, after reasonable allowance for personal services of active partners, to the owners of the capital in the proportions of their capital interests. Inquiry is directed to the fact of ownership. When that is established,[15] recognition of the owner as a partner follows, but recognition of the partnership agreement as controlling does not follow. The Commissioner reserves the right to reallocate income to attribute to active partners reasonable compensation and to

12. Revenue Act of 1951, § 340, incorporated into the Internal Revenue Code of 1939 as §§ 191 and 3797(a) (2), 26 U.S.C.A. §§ 191, 3797(a) (2).
§ 191. "Family partnerships.
"In the case of any partnership interest created by gift, the distributive share of the donee under the partnership agreement shall be includible in his gross income, except to the extent that such share is determined without allowance of reasonable compensation for services rendered to the partnership by the donor, and except to the extent that the portion of such share attributable to donated capital is proportionately greater than the share of the donor attributable to the donor's capital. The distributive share of a partner in the earnings of the partnership shall not be diminished because of absence due to military service. For the purpose of this section, an interest purchased by one member of a family from another shall be considered to be created by gift from the seller, and the fair market value of the purchased interest shall be considered to be donated capital. The 'family' of any individual shall include only his spouse, ancestors, and lineal descendants, and any trust for the primary benefit of such persons."

§ 3797. "Definitions
"(a) * * *
"(2) Partnership and partner. The term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term 'partner' includes a member in such a syndicate, group, pool, joint venture or organization. A person shall be recognized as a partner for income tax purposes if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person."

13. S. R. No. 781, 82nd Congress, 1st Session, 38; H. R. No. 586, 82nd Congress, 1st Session, 32.

14. Mim. 6767, Cum.Bul. 1952–1, p. 111 et seq.

15. A different result would follow, if the capital, or the additional capital, was clearly unnecessary to the business of the partnership.

each owner of a capital interest a proportionate part of the remaining income. This conditional recognition of the donee-owner as a partner thus avoids the possibility, inherent in a controlling recognition of the partnership agreement, that current income would be diverted from one who earned it by his personal effort and the use of his capital to one who did not.

We do not suggest that Mim. 6767 is inconsistent with Culbertson. Many considerations pertinent to the Culbertson inquiry are relevant in determining the fact of ownership of a capital interest. Some of the language of Culbertson anticipates the approach of Mim. 6767 which, itself, purports to be an application of the Culbertson principles. But the approach and the result are those of Blair.

In Mim. 6767, the Commissioner took a new position upon a number of specific matters. The absence of a contribution of original capital or of vital services, which Culbertson held should not be given conclusive significance, was stripped of most of its evidentiary weight. The business purpose requirement was satisfied, according to the new view, if a donee of an undivided interest in an existing partnership was the real owner of the interest, though the transaction was not intended to benefit the business of the partnership. Trustees as partners were to be recognized, and the case of a limited partner was not to be prejudiced because the general partners exercised the complete control contemplated by applicable state statutes.[16]

In the light of the finding of the Tax Court that the trusts in this case are the true owners of capital interests aggregating 36% of the total, an application of the principles of Mim. 6767 would require a reallocation of partnership income for each year to attribute reasonable compensation to the general partners and the remainder of the income to all of the partners proportionately in accordance with their capital interests.

■ The doctrine of collateral estoppel should not be applied when, because of changing rules and theories of taxation, a different result is required if uniformity in taxation is to be achieved.[17] The Commissioner should be free to apply impartially the approach of Mim. 6767 without discrimination against taxpayers who had been involved in litigation respecting earlier years and lost or favoritism for those who had won on the basis of a controlling recognition of the partners' allocation of income. The doctrine of collateral estoppel has no place when the ground rules have been so extensively changed that a new question is presented. If the question here was that decided in the earlier case, whether the partnership agreement and its allocation of income was entitled to controlling recognition, the doctrine of collateral estoppel might well be applicable. That doctrine should not foreclose consideration of the dissimilar question, whether under the principles of Mim. 6767 the trusts are entitled to limited recognition as partners to the extent that income allocated to them does not exceed earnings actually realized upon their investments.

■ Quite apart from the question of partnership recognition, however, the uncontested finding that the trusts are the real owners of 36% of the business compels taxation to them of the profits upon their investment.[18] The Tax Court recognized the principle and applied it with a limitation, and the remaining question is whether there was justification for the limitation. We think there was not.

In these tax years the demand for Stanbacks' headache powders was sub-

16. Cf. Roughan v. Commissioner, 4 Cir., 198 F.2d 253.

17. Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898.

18. Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Wofford v. Commissioner, 5 Cir., 207 F.2d 749.

stantial, and partnership income was much larger than the appraisals in the record of the value of the services of the general partners. The Tax Court exhibited a becoming concern that it not give verbal support to our earlier decision in Stanback v. Robertson while reaching a substantially contrary result by attributing the major portion of partnership earnings to capital. It thus fashioned a limitation upon its application of the Blair principle. To mitigate the anomalous result it foresaw, it treated the capital interests of the trusts as a loan, upon which the trusts, the owners of those capital interests, were entitled to a reasonable return, which the Tax Court found to be ten per cent of the appraised value of the original investment augmented by certain capital credits antedating the years in question. The avoidance of one anomaly only created another. When the Blair principle is found to be applicable we think it should not be circumscribed by artificial limitations. The earnings of equity capital may be far more or less than any reasonable expectation of the investor at the time he commits his money, but he does not enjoy the preferences, and should not be subjected to the limitations upon return, of the lender.

■ The investor is to be taxed upon the profits of the particular investment he makes whether in realization they are more or less than a prudent investor might have anticipated when he made his original investment. The profits actually realized are the measure of the tax rather than the reasonable hope the investor entertained in the beginning.

We think the Tax Court was correct in applying the Blair principle, but mistaken when it imposed the limitation that the taxable investment income should not exceed ten per cent of the appraised value of the investment.

Had the business been incorporated, as one would have supposed it would have been in the light of its large earnings and its need of increasing working capital, no income tax difficulty would have been encountered upon a transfer of 36% of the outstanding stock to the trusts. The taxpayers, as officers of the corporation, would have reported their compensation as part of their taxable gross income, but no one would have considered taxing to them dividends paid to the trustees. Such transfers of stock by parents are common. Though they may result in a reduction of the total family tax obligation, they are readily accepted by tax officials, and dividends subsequently paid are taxed to the transferees who receive them.

■ Capital interests in a partnership are not inalienable. They may be transferred by a parent to a child. The difficulty which family partnerships have encountered in obtaining tax recognition arose out of their employment to transfer earnings from the personal services of active partners to their inactive dependents. The approach of Mim. 6767 provides a basis, subject to proper control through the exercise of the Commissioner's power to reallocate income, of recognition of the transferee as the owner of income produced by his capital while withholding recognition of him as the owner of income properly attributable to the personal services of others. Thus the taxation of the owner of a capital interest in a partnership is harmonized with that of an owner of a capital interest in a corporation, while the evil inherent in a ready acceptance of the partners' allocation of income is avoided.

The decision of the Tax Court will be set aside and the cause remanded with directions to redetermine the income tax liabilities of the taxpayers for the years in question by attributing to each so much of the earnings of the partnership as will reasonably compensate him for his services and 32%, his proportionate interest in capital, of the remainder of the partnership income in each year.

Vacated and remanded.